1  MARIE M. MOFFAT, State Bar No. 62167
   LAWRENCE C. YEE, State Bar No. 84208
2  MARK TORRES-GIL, State Bar No. 91597
   OFFICE OF GENERAL COUNSEL
3  THE STATE BAR OF CALIFORNIA
   180 Howard Street
4  San Francisco, CA 94105
   Telephone: (415) 538-2339
5  Facsimile: (415) 538-2321
   Email: mark.torresgil@calbar.ca.gov
6
   Counsel for The State Bar of California,
7  Hon. Judith Epstein, Hon. Madge Watai, Hon.
   Ronald Stovitz, Hon. Patrice McElroy, Scott Drexel,
8  Lawrence J. DalCerro, Donald Steedman, Tammy
   Albertsen-Murray, Erica Dennings, Michael Hummer,
9  Jeffrey Bleich and Sheldon Sloan

10             IN THE UNITED STATES DISTRICT COURT

11           FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                       OAKLAND DIVISION

13

14  FRANCIS FAHY,                    )  Case No.  CV- 08-2496-CW
                                     )
15          Plaintiff,               )  THE STATE BAR DEFENDANTS'
                                     )  REQUEST FOR JUDICIAL NOTICE IN
16  v.                               )  SUPPORT OF MOTION TO DISMISS
                                     )  PLAINTIFF'S COMPLAINT
17  JUSTICES OF THE SUPREME COURT, et al.,  )
                                     )  DATE: October 16, 2008
18          Defendants.              )  TIME: 2:00 p.m.
                                     )  PLACE: Courtroom 2
19  _____  )  JUDGE: Hon. Claudia Wilken

20

21          The State Bar of California, Hon. Judith Epstein, Hon. Madge Watai, Hon. Ronald Stovitz,

22  Hon. Patrice McElroy, Scott Drexel, Lawrence DalCerro, Donald Steedman, Tammy Albertsen-

23  Murray, Erica Dennings, Michael Hummer, Jeffrey Bleich and Shelden Sloan (collectively "State

24  Bar Defendants") hereby respectfully request, pursuant to section 201 of the Federal Rules of

25  Evidence, that the Court take judicial notice of the following:

26          1.      Decision, filed April 20, 2005, *In the Matter of Francis Thomas Fahy*, State Bar

27                  Court, Hearing Department, Case No. 01-O-02011-PEM, attached hereto as **Exhibit**

28                  **A**.

                                            1

2. Opinion on Review, filed February 23, 2007, *In the Matter of Francis Thomas Fahy*, State Bar Court, Review Department, Case No. 0-O-02011 - PEM, attached hereto as **Exhibit B**.

3. Petition for Writ of Review of State Bar Court Proceeding No. 01-O-01011- PEM, filed May 2, 2007, by Francis Fahy in the Supreme Court of California, attached as **Exhibit C.**

4. Order denying petition for review, filed June 20, 2007, *In re Francis Thomas Fahy*, No. S151939, Supreme Court of California (En Banc), attached hereto as **Exhibit D.**

5. Petition for a Writ of Certiorari, (executed on July 14, 2007 but lacking stamped filing date), *Fahy v. Ronald M. George*, In the Supreme Court of the United States, attached as **Exhibit E**.

6. United States Supreme Court Docket Sheet for *Fahy v. State Bar of California*, No. 07-5801, reflecting that Fahy's Petition for Writ of Certiorari was filed on July 14, 2007, attached as **Exhibit F**.

7. Notice of Order of denial of petition for a writ of certiorari, dated October 9, 2007, from William K. Suter, Clerk, Supreme Court of the United States re *Francis Fahy v. State Bar of California*, Case No. 07-5801, attached as **Exhibit G**.

DATED: September 5, 2008          Respectfully submitted,

MARIE M. MOFFAT
LAWRENCE C. YEE
MARK TORRES-GIL


By:_____s/Mark Torres-Gil_____
          Mark Torres-Gil

Counsel for The State Bar of California,  Hon. Judith Epstein, Hon. Madge Watai, Hon. Ronald Stovitz, Hon. Patrice McElroy, Scott Drexel, Lawrence J. DalCerro, Donald Steedman, Tammy Albertsen-Murray, Erica Dennings, Michael Hummer, Jeffrey Bleich and Sheldon Sloan

2

PROOF OF SERVICE BY MAIL

I, Joan Sundt, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On September 5, 2008, following ordinary business practice, I placed for collection for mailing at the offices of the State Bar of California, 180 Howard Street, San Francisco, California 94105, one copy of STATE BAR DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT fully prepaid in an envelope addressed as follows:

Francis Fahy
259 Oak Street
San Francisco, CA 94102

I am readily familiar with the State Bar of California's practice for collection and processing correspondence for mailing with the U.S. Postal Service and, in the ordinary course of business, the correspondence would be deposited with the U.S. postal mail service on the day on which it is collected at the business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California this 5th day of September, 2008.

s/Joan Sundt

State Bar Defendants' Request for Judicial Notice                    CV-08-2496 CW

**EXHIBIT A**

# PUBLIC MATTER

**FILED** 

APR 2 0 2005

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

## STATE BAR COURT

## HEARING DEPARTMENT – SAN FRANCISCO

In the Matter of

**FRANCIS THOMAS FAHY,**

**Member No. 147721,**

A Member of the State Bar.

)
)
)
)
)
)
)

**Case No. 01-O-02011-PEM**

**DECISION**

## I. INTRODUCTION

Respondent Francis Thomas Fahy is charged with multiple acts of misconduct in one client matter. The charged misconduct includes (1) failing to notify client of receipt of client funds; (2) failing to maintain client funds in a trust account; (3) misappropriating client funds for his own use and benefit; (4) and failing to pay client funds promptly.

This court finds, by clear and convincing evidence, that Respondent is culpable of all four counts and recommends that he be suspended for three years and until he provides proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and present learning and ability in the general law pursuant to standard 1.4(c)(ii), Standards for Attorney Sanctions for Professional Misconduct, stayed, and that he be placed on probation for five years on conditions including 18 months actual suspension.

## II. PERTINENT PROCEDURAL HISTORY

The Office of the Chief Trial Counsel of the State Bar of California ("State Bar") initiated this proceeding by filing a nine-count Notice of Disciplinary Charges ("NDC") on December 16, 2003. On February 23, 2004, Respondent filed a response to the NDC.

A three-day trial was held January 25, 26, and 27, 2005. The State Bar was represented in this proceeding by Deputy Trial Counsel Tammy M. Albertsen-Murray. Respondent represented


kwiktag®    022 607 321

1    himself *in propria persona*.  During the trial, the parties reached a stipulation regarding facts and

2    conclusions of law, which is hereby approved.

3    The court took this proceeding under submission on January 27, 2005, after closing

4    arguments.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Jurisdiction

7    Respondent was admitted to the practice of law in California on July 31, 1990, and has been

8    a member of the State Bar of California at all times since that date.

### B.    Findings of Fact

10    The following findings of fact are based on the evidence and testimony introduced at this

11    proceeding and the parties' stipulation. The court does not find Respondent's testimony to be

12    credible.

### 1.    Barbara Neal hires Respondent

14    On June 15, 1999, Barbara Neal ("Neal") hired Respondent to represent her in a personal

15    injury action against Dolby Labs, Inc. ("Dolby"). The action arose out of injuries Neal sustained

16    when she slipped and fell at a movie showing at Dolby in October 1998. The agreement provided

17    that Respondent would receive one-third of the amount recovered prior to the filing of a lawsuit and

18    40 percent of the amount recovered after suit is instituted. The agreement also allowed Respondent

19    to endorse Neal's signature to all settlement checks, provided that Respondent immediately

20    distributed to Neal her share of the recovery.[1]

### 2.    Kemper Insurance Company sends Respondent a settlement check

22    On August 9, 1999, Respondent sent on behalf of Neal a formal demand letter to Sally

23    Christiano ("Christiano") of Kemper Insurance Company ("Kemper Insurance"). In that letter,

24    Respondent stated he was authorized to accept $200,000 in exchange for a full and complete

25    release of all claims Neal had or may have in the future against Kemper Insurance.[2] On

---

27    [1] See State Bar Exhibit 3.

28    [2] See State Bar Exhibit 5.

1   September 22, 1999, Christiano sent Respondent a letter offering to pay what they believed was

2   Neal's reasonable and related medical bills up to the limits of their insured's Premise Medical

3   Coverage directly related to the accident. [3] On September 28, 1999, Respondent sent another

4   letter to Kemper Insurance demanding that Kemper Insurance remit payment in full for Neal's

5   medical bills totaling $33,762.41.[4] On September 30, 1999, Christiano sent Respondent a

6   settlement check in the amount of $5,000 from the medical payments coverage.[5]

7       On October 4, 1999, Respondent endorsed Neal's name on the draft and deposited the

8   settlement check into his client trust account ("CTA").[6] Pursuant to the fee agreement,

9   Respondent may have been entitled to $1,666.67 as fees since no lawsuit had been filed at the

10  time. Respondent, therefore, was obligated to maintain at least $3,333.33 in trust.

11      *3. Respondent files a complaint on Neal's behalf and fails to tell Neal of receipt of $5,000*

12

13      On October 13, 1999, Respondent filed a complaint on Neal's behalf, *Barbara Neal v.*

14  *Dolby Labs, Inc.*, San Francisco County Superior Court case number 307146.[7] On November 20,

15  1999, Respondent sent Neal a letter stating that he no longer wanted to represent her in the *Neal v.*

16  *Dolby* case because he reviewed a copy of the City and County of San Francisco's ordinance

17  regarding liens on actions against third parties and he feared possible repercussions for even

18  inadvertent noncompliance. In that letter, he directed Neal to seek alternate counsel immediately

19  and he enclosed an original and a copy of a substitution of attorney form. He requested that she

20  sign the form within five days so that he could file it with the court. He warned Neal that, if she

21  did not sign the substitution form, he would be forced to make a motion to withdraw as counsel of

22

23  ――――――――――――――

24      [3] See State Bar Exhibit 7.

25      [4] See State Bar Exhibit 9.

26      [5] See State Bar Exhibit 10.

27      [6] See State Bar Exhibit 2, pages 0001, 0003 & 0004.

28      [7] See State Bar Exhibit 12.

-3-

record.[8] In that letter, Respondent made no mention of the $5,000 settlement check that he had received.

Between March 23, 2000 and November 15, 2000, the balance of Respondent's CTA fell below $3,333.33 on several occasions, including falling to a balance of $616.72 on or about May 31, 2000.[9]

### 4. *Shelly Buchanan substitutes into case as attorney for Neal*

Notwithstanding Respondent's November 20, 1999 letter, Respondent sent Neal a letter on April 12, 2000 requesting that she answer form interrogatories.[10] On May 31, 2000, a substitution of counsel was filed with the court.[11] On June 6, 2000, Respondent sent Neal a letter confirming that he received a call from Shelly Buchanan ("Buchanan"), her new attorney, and setting forth arrangements for Neal to pick up her file.

### 5. *Neal and Buchanan discover that Kemper Insurance has given Respondent $5,000*

In November 2000 at an early settlement conference sponsored by the Bar Association of San Francisco, Buchanan and Neal learned for the first time that Kemper Insurance had paid Respondent $5,000 on behalf of Neal. Prior to November 2000, Respondent never revealed to Neal or Buchanan the fact that he had received $5,000 from Kemper Insurance on behalf of Neal. Furthermore, Respondent did not pay any of Neal's medical providers any portion of the $5,000.

When Neal learned that Respondent had received $5,000 on her behalf, she requested that Respondent give her the $5,000. On November 27, 2000, Respondent sent a letter enclosing a check for $5,000 made out to Buchanan and Neal. In that letter, Respondent stated that he had a claim for attorney's fees and costs in the matter and that he trusted that she would keep in trust the amount in dispute for his fees and funds owed to the medical lienholders.

---

[8] See State Bar Exhibit 11.

[9] See State Bar Exhibit 2, pages 0046-0050.

[10] See State Bar Exhibit 15.

[11] See State Bar Exhibit 16.

6.   **Respondent pursues claim for attorney's fees**

On May 7, 2001, Buchanan sent Respondent a check in the amount of $157.29 for his costs in the Neal matter. The costs were based upon receipts contained in Respondent's file.[12]  On May 11, 2001, Respondent sent Buchanan a letter disagreeing with her analysis of what he was owed. Respondent believed that he was entitled to $1,823.77 based upon the fee agreement he had with Neal. He directed Buchanan to send him a check in satisfaction of his lien or to hold that amount in trust so that he and Neal could arbitrate his lien with the State Bar.

On December 1, 2003, Respondent sent Buchanan another letter directing her to remit the fee he claimed owed to him on the Neal matter. He also warned Buchanan that if she did not send the fee he would report her to the State Bar.

7.   **Respondent's Contention**

Respondent maintains that he told Neal of the receipt of the money from Kemper Insurance immediately or at least within a week of receiving the money. He even maintains that he discussed the forthcoming medical payment money from Kemper Insurance several times with Neal before he received it. However, he does not recall the form in which the discussion took place. The court does not believe Respondent ever told Neal of his receipt of the payment from Kemper Insurance until November 2000.

The court does not believe Respondent for the following reasons: (a) Within two months after Respondent deposited the Kemper Insurance check, Respondent sent Neal a letter stating that he no longer wanted to represent her in the *Neal v. Dolby* case because of possible adverse consequences for even inadvertent noncompliance with the City and County of San Francisco's lien ordinance.[13]  In that letter, he never mentioned the Kemper Insurance check that he had received on her behalf; (b) Neal credibly testified that she did not learn of the Kemper Insurance check until she attended a deposition hearing in November of 2000. Neal also credibly testified that, after her initial meeting with Respondent, it was impossible to reach him and that she

---

[12]  See State Bar Exhibit 22.

[13]  See State Bar Exhibit 11.

1  essentially had no contact with him until he sent her the November 20 letter having her sign the

2  substitution of attorney form.  The court has no reason to disbelieve Neal; and  (c) Buchanan

3  credibly testified that she learned of the Kemper Insurance check in November of 2000.  She

4  carefully reviewed the file after Respondent sent it to her in June of 2000 and found no references

5  such as transmittal letters pertaining to the $5,000 from Kemper Insurance.  Respondent never

6  advised her that he was holding $5,000 on behalf of Neal.  Likewise, the court has no reason to

7  disbelieve Buchanan.

8    Respondent claims that he, at all times, held the Kemper Insurance check in trust for his

9  client so that lienholders could be paid.  Respondent  testified that, shortly after he deposited the

10  money in his Bank of America trust account, he took it out of that account and placed it in a trust

11  instrument in Sanwa Bank and that he had a trust ledger in his office.  Respondent never said that

12  there was an account and further testified that he did not recall whether it was called a trust

13  account.

14    The court finds Respondent's contention that he kept the money in a trust instrument in

15  Sanwa Bank with a trust ledger unbelievable.  Respondent presents no credible evidence to support

16  his claim that he kept the Kemper check in a trust instrument. [14]  Respondent's belated finding and

17  submission into evidence of the purported trust ledger is suspect.

18  **C.    Conclusions of Law**

19    1.    ***Count One (A): Failure to Notify Client of Receipt of Client Funds (Rules of
            Prof. Conduct, Rule 4-100(B)(1))***[15]

20

21    Respondent is charged in Count One (A) of the NDC with a wilful violation of rule 4-

22  100(B)(1), which requires a member to promptly notify a client of receipt of the client's funds,

23  securities or other property.  The court finds, by clear and convincing evidence, that Respondent is

24  culpable of violating rule 4-100(B)(1).  On September 30, 1999, Christiano of Kemper Insurance

25

26    [14] See Respondent's Exhibit P.  Respondent claims that he does not have records because he was
        unable to obtain access to the basement in which he kept those records and the bank with whom he had

27  these transactions moved and then closed.  When he was finally allowed into the basement, he could not
        find any of the Sanwa Bank records.

28    [15] References to "rule(s)" are to the Rules of Professional Conduct.

sent Respondent a settlement check in the amount of $5,000 from the medical payments coverage for the benefit of Neal. On October 4, 1999, Respondent endorsed Neal's name on the check and deposited into his CTA. However, Neal learned for the first time in November 2000 that the medical payments had been sent to Respondent. Moreover, Respondent was not the person who informed her that the proceeds had been paid. Respondent's failure to notify Neal of his receipt of client funds constitutes a gross violation of Respondent's duty under rule 4-100(B)(1).

### 2. Count One (B): Failure to Maintain Client Funds in Trust Account (Rules of Prof. Conduct, Rule 4-100(A))

Respondent is charged in Count One (B) of the NDC with a violation of rule 4-100(A), which requires attorneys to maintain client funds in bank accounts labeled "trust account," "client's funds account," or words of similar import. The court finds, by clear and convincing evidence that Respondent is culpable of the charged violation of rule 4-100(A). Between October 5, 1999 and November 27, 2000, Respondent did not disburse any funds on Neal's behalf. When Respondent received $5,000 from Kemper Insurance on Neal's behalf, Respondent was, pursuant to his fee agreement with Neal, entitled to $1,666.67 as fees and obligated to maintain $3,333.33 in trust on Neal's behalf. Between March 23, 2000, and November 15, 2000, the balance of Respondent's CTA fell below $3,333.33 on several occasions, including falling to a balance of $612.72 on May 31, 2000.[16] The fact that the balance of Respondent's trust account fell below the amount credited to Neal constitutes a failure of Respondent to maintain client funds in a trust account. As more fully set forth above, this court does not believe that Respondent kept the funds in a trust instrument at Sanwa Bank. This is a blanket assertion by Respondent with a file that contained no documents that could substantiate his claim.

/ / /

/ / /

/ / /

---

[16] According to the terms of the fee agreement, after a lawsuit was filed, Respondent was entitled to 40 percent of the recovery as his fee. Even so, Respondent did not maintain the equivalent of 60 percent ($3,000) in trust.

3.  *Count One (C): Moral Turpitude (Bus. & Prof. Code, § 6106)*

Business and Professions Code section 6106[17] provides that the member's commission of an act involving moral turpitude, dishonesty or corruption constitutes grounds for suspension or disbarment. The State Bar charges that Respondent committed acts of moral turpitude by misappropriating Neal's funds for his own use and benefit. Respondent argues that he put the money in a trust instrument and kept an account of the monies in a trust ledger in his office. As previously stated, the court rejects his testimony in that regard and further views his trust ledger entries as suspicious. Respondent misappropriated Neal's funds, which constitutes moral turpitude since misappropriation reflects on Respondent's disregard of a fundamental rule of ethics: honesty, in wilful violation of section 6106.

4.  *Count One (D): Failure Pay Client Funds Promptly (Rules of Prof. Conduct, Rule 4-100(B)(4)*

Respondent is charged in Count One (D) of the NDC with a violation of rule 4-100(B)(4), which provides that a member shall promptly pay or deliver as requested any funds, securities, or other properties in the possession of the member which the client is entitled to receive.

The court finds by clear and convincing evidence that Respondent is culpable of the charged violation of rule 4-100(B)(4). On September 30, 1999, Kemper Insurance issued check No. 411-0-463-341 in the amount of $5,000 payable to Neal and Respondent. On October 5, 1999, Respondent deposited the check in his CTA on behalf Neal. Respondent did not disburse any of the proceeds from the check to Neal until November 2000 after Buchanan sent Respondent a letter requesting an accounting of the $5,000. Respondent's failure to disburse the settlement funds more than a year after he received them constitutes a violation of rule 4-100(B)(4).

## IV. LEVEL OF DISCIPLINE

A.  **Factors in Mitigation**

Respondent bears the burden of proving mitigating circumstances by clear and convincing evidence. (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, standard

---

[17] References to "section(s)" are to sections of the Business and Professions Code.

1  1.2(e).)[18]

2    The absence of a prior record of discipline over many years of practice prior to the

3  commencement of the misconduct is a mitigating factor. (Standard 1.2(e)(i).) Respondent was in

4  practice for approximately nine years at the time his misconduct commenced in October 1999.

5    Respondent was recognized for pro bono mentoring at San Francisco Law School in 2003. He

6  did some pro bono family law matters around 1997. Respondent's pro bono work merits mitigation

7  credit. (*In the Matter of Respondent E* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 716, 729.)

8    Respondent was embroiled in a troublesome family situation for years. (Standard 1.2(e)(iv).)

9    Respondent repaid the settlement funds to Neal prior to the filing of the NDC herein. (Standard

10  1.2(e)(vii).)

11    Respondent presented two witnesses regarding his good character. However, the court finds

12  that these witnesses do not represent an extraordinary demonstration of Respondent's good character

13  attested to by a wide range of references in the legal and general communities and who are aware of

14  the full extent of the member's misconduct. (Standard 1.2(e)(vi).) The court found Respondent's

15  wife's testimony to be untrustworthy. First, she said she met with Neal on two occasions but, after

16  suggestion by Respondent, she said that she was not sure how many times she met with Neal.

17  Lawrence Mann, an attorney, strongly supported Respondent, however, he was not fully aware of the

18  extent of Respondent's misconduct.

19    The court does not find mitigation on the ground that the State Bar delayed in bringing this

20  matter to trial. The mere lapse of time is not a mitigating circumstance unless the member has

21  demonstrated prejudice. There is no such demonstration in this case. (*Blair v. State Bar* (1989) 49

22  Cal.3d 762, 774; *Yokozeki v. State Bar* (1974) 11 Cal.3d 436, 449.)

23  **B.    Factors in Aggravation**

24    Respondent committed multiple acts of misconduct. (Standard 1.2(b)(ii).)

25    Respondent demonstrated indifference toward rectification of or atonement for the

26  consequences of his misconduct. (Standard 1.2(b)(v).) He refuses to admit to any wrongdoing, despite

27  _____

28    [18] All further references to "standard(s)" are to this source.

-9-

1    the clear and convincing evidence that he withheld money owed to Neal for over a year. In his closing

2    argument in this proceeding, he still held fast to the position that he never did anything wrong. He

3    noted that he still has a problem in trying to figure out what he did wrong. He does not understand

4    why it is presumed that he misused the funds if they are removed from the client trust account.

5        In relevant part, standard 1.2(b)(iii) makes consideration as an aggravating circumstance

6    whether Respondent's misconduct was surrounded or followed by bad faith, dishonesty, concealment,

7    overreaching or other violations of the State Bar Act or Rules of Professional Conduct. In the instant

8    case, there is concealment and other ethical violations.

9        The court does not believe that Respondent told Neal and her subsequent attorney about the

10   receipt of the settlement money. In his communications with Neal and her subsequent attorney, he

11   never mentioned receipt of $5,000.[19]   Indeed, if Neal had not obtained another attorney, it is

12   conceivable that Neal never would have learned that Respondent received $5,000 on her behalf. His

13   nondisclosure is not a mere oversight. He deliberately undertook an effort to conceal the existence

14   of the $5,000 from Neal and her attorney.

15       Also, when Respondent subpoenaed Buchanan, he used the State Bar Court's address as the

16   return address on the envelope.[20]   Respondent's use of the State Bar's address  was misleading,

17   because Respondent's intent  was to leave  Buchanan with the impression that the State Bar Court

18   had issued the subpoena.

19       Respondent's conduct during these proceedings was disrespectful to the court and the

20   discipline process and thereby harmed the administration of justice, the public and the profession

21   (Standard 1.2(b)(iv).) The court has taken judicial notice of the documents Respondent has filed in this

22   case, including the January 5, 2004, motion to dismiss; the March 16, 2004, response to motion for

23   order to strike answer; and the January 24, 2005, opposition to motion in limine and motion to dismiss

24   charges. Respondent demonstrated his lack of respect for the court and for these proceedings by,

25   among other things, (1) resorting to name calling toward the court and State Bar trial counsel (i.e.,

26

27       [19] See State Bar Exhibits 11, 15 and 17.

28       [20] See State Bar Exhibit 32.

1    "hillbilly scum," "gangsters," "fraud," "criminals," "thugs"); (2) attempting to demean same by

2    referring to the court and its judges as "court" and "judges" in quotations marks, and addressing State

3    Bar trial counsel as "Ms. Tammy"; (3) asserting that the court and the prosecution are "cohorts" and

4    are conspiring to deprive Respondent to the right to practice law and to publicly defame and

5    maliciously prosecute him; (4) throwing papers down on the floor in court instead of handing them

6    to trial counsel; and (5) otherwise denigrating the integrity of the court because the undersigned, the

7    then-State Bar trial counsel, Erica Dennings, and Neal "are all black, all of the same approximate

8    generation and from Massachusetts" and he "cannot expect that [the court] will 'do the right thing'"

9    or remove itself from this matter for bias, for the same reason. He further stated in reference to the

10   court that "you and your friends" would seek personal retribution against Respondent's spouse, a

11   witness herein, by "pulling strings" with her employer to hurt her career.[21]

12        In addition, Respondent failed to communicate with his client, a violation of section 6068(m).

13   Neal called him on numerous occasions after June 15, 1999 and he never called her back. This

14   uncharged act is considered in aggravation.

15                        V. **DISCUSSION**

16        The purpose of State Bar disciplinary proceedings is not to punish the attorney, but to protect

17   the public, to preserve public confidence in the profession, and to maintain the highest possible

18   professional standards for attorneys. (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; *Cooper v.*

19   *State Bar* (1987) 43 Cal.3d 1016, 1025; standard 1.3.)

20        Standard 1.6 provides that the appropriate sanction for the misconduct found must be balanced

21   with any mitigating or aggravating circumstances, with due regard for the purposes of imposing

22   discipline. If two or more acts of professional misconduct are found in a single disciplinary

23   proceeding, the sanction imposed shall be the most severe of the applicable sanctions. (Standard

24   1.6(a).) The level of discipline is progressive. (Standard 1.7(b).) The standards, however, are

25   guidelines from which the court may deviate in fashioning the most appropriate discipline considering

26   all the proven facts and circumstances of a given matter. (*In re Young* (1989) 49 Cal.3d 257, 267 (fn.

27

28       [21] See State Bar Exhibit 35.

-11-

1    11); *Howard v. State Bar* (1990) 51 Cal.3d 215.) They are "not mandatory 'sentences' imposed in a

2    blind or mechanical manner." (*Gary v. State Bar* (1988) 44 Cal.3d 820, 828.)

3    　　　Standards 2.2(a) and (b) and 2.3 apply in this matter. The most severe sanction is found at

4    standard 2.2(a) which recommends disbarment for wilful misappropriation of entrusted funds unless

5    the amount misappropriated is insignificantly small or unless the most compelling mitigating

6    circumstances clearly predominate, in which case the minimum discipline recommended is one year

7    actual suspension.

8    　　　Respondent has been found culpable, in one client matter, of violations of rule 4-100(A), (B)(1)

9    and (B)(4) and section 6106. In mitigation, he has nine years of blemish-free practice. The

10   aggravating factors are multiple acts of misconduct, uncharged misconduct and indifference toward

11   rectification of the misconduct.

12   　　　The State Bar recommended in its pretrial statement discipline consisting of five years stayed

13   suspension and one to two years of actual suspension. In closing argument, the prosecution believed

14   the case calls for disbarment. The court disagrees.

15   　　　The Supreme Court has recognized that not every misappropriation which is technically wilful

16   is equally culpable. (*Lawhorn v. State Bar* (1987) 43 Cal.3d 1357, 1367.) The misconduct herein

17   related to one client, one transaction and one law firm. There was "no extended pattern of dishonesty

18   or deceit indicating a consistent course of conduct, or any convincing evidence that petitioner is a

19   practitioner unworthy of trust by the public generally." (*Chang v. State Bar* (1989) 49 Cal.3d 114, 129

20   (dissent by Mosk, J.).)[22]

21

22   　　　[22] In *Chang*, the attorney was disbarred for misappropriating over $7000 by secretly opening a
     trust account in his own name while employed by a law firm, depositing his clients' funds in the trust
23   account, later taking the funds, failing to comply with the client's request for copies of bank records, and
     refusing to pay the client the funds owed. The attorney was also found to have failed to cooperate in the
24   disciplinary investigation by making misrepresentations to a State Bar investigator. The attorney offered
     no evidence in mitigation, but it was noted that he had no prior record of discipline. In ordering
25   disbarment, however, the Supreme Court noted that it had several reasons to doubt that the attorney
     would conform his conduct in the future to the professional standards required of attorneys in California.
26   In particular, the Supreme Court noted that the attorney had never acknowledged the impropriety of
     his actions; he had made no effort at reimbursing the client, and displayed a lack of candor to the
27   the State Bar.

28

1    The instant case presents less misconduct and greater mitigation than *Chang*.

2    The court found *Boehme v. State Bar* (1988) 47 Cal.3d 448, instructive. In *Boehme*, the

3    Supreme Court suspended an attorney from the practice of law for 18 months and until he made

4    restitution for misappropriating $1,901 of a client's settlement funds. In aggravation, the Court found

5    indifference and lack of insight (no remorse and no restitution to client during pendency of disciplinary

6    case) and lack of candor and cooperation (making false and misleading statements to the State Bar

7    Court). In mitigation, the attorney had been admitted to practice for 22 years and had no prior

8    disciplinary record; had suffered a serious illness which resulted in lengthy disability; and offered

9    favorable good character testimony. The Supreme Court found that disbarment was excessive and

10   unwarranted for the attorney's single instance of misconduct in light of his health problems and prior

11   good record.

12   Similarly, in the instant case, Respondent misappropriated $5,000, although he eventually

13   repaid it prior to the filing of the NDC herein. There are some aggravating factors, including

14   uncharged misconduct and lack of remorse, and some mitigating factors, including nine years of

15   discipline-free practice, family problems, pro bono work and making restitution prior to the inception

16   of this disciplinary matter. There is no extended pattern of dishonesty indicating general

17   untrustworthiness. Accordingly, the court believes that the public will be sufficiently protected by a

18   lengthy suspension with strict probation conditions, including attending ethics, trust accounting and

19   anger management classes,[23] as more fully set forth below.

20   ## VI. **RECOMMENDED DISCIPLINE**

21   IT IS HEREBY RECOMMENDED that Respondent Francis Thomas Fahy be suspended from

22   the practice of law for three years and until he provides proof satisfactory to the State Bar Court of his

23

24        [23] These conditions will reasonably serve the purposes of probation which include the protection
25   of the public, Respondent's rehabilitation and the integrity of the legal profession. (Section 6093(a); *In
     the Matter of Marsh* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr. 291, 299.) For example, the ethics
26   and trust accounting classes will help Respondent become aware and understand his obligations and
     duties to his clients and properly handle client funds. As to the issue of anger management,
27   Respondent's offensive behavior throughout these proceedings as set forth on pages 10 and 11 of this
     decision, was very troubling to this court. Hopefully, anger management classes will help Respondent
28   learn to control his anger for the protection of the public and the integrity of the legal profession.

rehabilitation, fitness to practice and present learning and ability in the general law pursuant to standard 1.4(c)(ii), Standards for Attorney Sanctions for Professional Misconduct; that execution of that suspension be stayed, and that Respondent be placed on probation for five years, with the following conditions:

1. Respondent must be actually suspended from the practice of law for the first 18 months of probation;

2. During the period of probation, Respondent must comply with the State Bar Act and the Rules of Professional Conduct;

3. Within ten (10) days of any change, Respondent must report to the Membership Records Office of the State Bar, 180 Howard Street, San Francisco, California, 94105-1639, and to the State Bar Probation Office, all changes of information, including current office address and telephone number, or if no office is maintained, the address to be used for State Bar purposes, as prescribed by section 6002.1 of the Business and Professions Code;

4. Respondent must submit written quarterly reports to the State Bar Probation Office on each January 10, April 10, July 10, and October 10 of the period of probation. Under penalty of perjury, Respondent shall state whether Respondent has complied with the State Bar Act, the Rules of Professional Conduct, and all conditions of probation during the preceding calendar quarter. If the first report will cover less than thirty (30) days, that report shall be submitted on the next following quarter date, and cover the extended period.

In addition to all quarterly reports, a final report, containing the same information, is due no earlier than twenty (20) days before the last day of the probation period and no later than the last day of the probation period;

5. Within 30 calendar days from the effective date of the Supreme Court's final disciplinary order in this proceeding, Respondent must contact the Office of Probation and schedule a meeting with his assigned probation deputy to discuss probation conditions. At the direction of the Office of Probation, Respondent must meet with the probation deputy either in person or by telephone. During the period of probation, Respondent must meet promptly with the probation deputy as directed and

1    upon request.

2        6.    Reporting requirements.

3            a.    If Respondent possesses client funds at any time during the period covered by a

4    required quarterly report, Respondent must file with each required report a certificate

5    from Respondent and a certified public accountant or other financial professional

6    approved by the Office of Probation, certifying that: Respondent has maintained a bank

7    account in a bank authorized to do business in the State of California, at a branch

8    located within the State of California, and that such account is designated as a "Trust

9    Account" or "Client's Funds Account"; and Respondent has kept and maintained the

10   following:

11         i.    a written ledger for each client on whose behalf funds are held that sets forth:

12             1.    the name of such client,

13             2.    the date, amount, and source of all funds received on behalf of such

14                 client,

15             3.    the date, amount, payee and purpose of each disbursement made on

16                 behalf of such client, and

17             4.    the current balance for such client;

18         ii.    a written journal for each client trust fund account that sets forth:

19             1.    the name of such account,

20             2.    the date, amount, and client affected by each debit and credit, and

21             3.    the current balance in such account.

22         iii.    all bank statements and canceled checks for each client trust account; and

23         iv.    each monthly reconciliation (balancing) of (i), (ii), and (iii) above, and if there

24   are any differences between the monthly total balances reflected in (i), (ii), and

25   (iii) above, the reason for the differences, and that Respondent has maintained

26   a written journal of securities or other properties held for a client that specifies:

27             1.    each item of security and property held;

28

1        2.      the person on whose behalf the security or property is held;

2        3.      the date of receipt of the security or property;

3        4.      the date of distribution of the security or property; and

4        5.      the person to whom the security or property was distributed.

5   b.    If Respondent does not possess any client funds, property or securities during the

6       entire period covered by a report, Respondent must so state under penalty of perjury

7       in the report filed with the Office of Probation for that reporting period. In this

8       circumstance, Respondent need not file the accountant's certificate described above.

9   c.    The requirements of this condition are in addition to those set forth in rule 4-100, of the

10      Rules of Professional Conduct.

11   7. Subject to the assertion of applicable privileges, Respondent must answer fully, promptly,

12 and truthfully, any inquiries of the State Bar Office of Probation which are directed to Respondent

13 personally or in writing, relating to whether Respondent is complying or has complied with the

14 conditions contained herein;

15   8. Within one year of the effective date of the discipline herein, Respondent must provide to

16 the Office of Probation satisfactory proof of attendance at a session of the Ethics School and a session

17 of the Client Trust Accounting School, given periodically by the State Bar at either 180 Howard Street,

18 San Francisco, California, 94105-1639, or 1149 South Hill Street, Los Angeles, California, 90015-

19 2299, and passage of the test given at the end of each session. Arrangements to attend Ethics School

20 and Client Trust Accounting School must be made in advance by calling (213) 765-1287, and paying

21 the required fees. This requirement is separate from any Minimum Continuing Legal Education

22 Requirement ("MCLE"), and respondent must not receive MCLE credit for attending Ethics School

23 or Client Trust Accounting School (Rules Proc. of State Bar, rule 3201);

24   9. Within one year of the effective date of the discipline herein, Respondent must submit to

25 the Office of Probation satisfactory evidence of completion of no less than two hours of MCLE-

26 approved courses in anger management. Respondent must obtain approval from the Office of

27 Probation prior to enrolling in any such course;

28

1    10. The period of probation shall commence on the effective date of the order of the Supreme

2    Court imposing discipline in this matter; and

3    11. At the expiration of the period of this probation, if Respondent has complied with all the

4    terms of probation, the order of the Supreme Court suspending Respondent from the practice of law

5    for three years and until he provides proof satisfactory to the State Bar Court of his rehabilitation,

6    fitness to practice and present learning and ability in the general law pursuant to standard 1.4(c)(ii),

7    Standards for Attorney Sanctions for Professional Misconduct shall be satisfied and that suspension

8    shall be terminated.

9    It is further recommended that Respondent take and pass the Multistate Professional

10    Responsibility Examination ("MPRE") administered by the National Conference of Bar Examiners,

11    Multistate Professional Responsibility Examination Application Department, P.O. Box 4001, Iowa

12    City, Iowa, 52243, (telephone 319-337-1287) and provide proof of passage to the State Bar Probation

13    Office during the period of his actual suspension. Failure to pass the Multistate Professional

14    Responsibility Examination within the specified time results in actual suspension by the Review

15    Department, without further hearing, until passage. But see rule 951(b) of the, California Rules of

16    Court, and rule 321(a)(1) and (3), of the Rules of Procedure of the State Bar.

17    It is also recommended that Respondent be ordered to comply with the requirements of rule

18    955 of the California Rules of Court within 30 calendar days of the effective date of the Supreme Court

19    order in this matter, and file the affidavit provided for in paragraph (c) within 40 days of the effective

20    date of the order showing his compliance with said order.

21                                    **VII.  COSTS**

22    The court recommends that costs be awarded to the State Bar pursuant to Business and

23    Professions Code section 6086.10, and that those costs be payable in accordance with section 6140.7.

24

25    Dated: April 19, 2005

26                                                                    Pat McElroy
                                                                        Judge of the State Bar Court

27

28

-17-

# CERTIFICATE OF SERVICE
## [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on April 20, 2005, I deposited a true copy of the following document(s):

**DECISON, filed APRIL 20, 2005**

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

**FRANCIS T. FAHY**
**259 OAK ST**
**SAN FRANCISCO        CA 94102**

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**TAMMY ALBERTSEN-MURRAY , Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on **April 20, 2005**.

**Lauretta Cramer**
Case Administrator
State Bar Court

Certificate of Service.wpt

**EXHIBIT B**

PUBLIC MATTER – NOT DESIGNATED FOR PUBLICATION

**FILED**

FEB 23 2007

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

## REVIEW DEPARTMENT OF THE STATE BAR COURT

In the Matter of

**FRANCIS T. FAHY,**

Member of the State Bar.

)
)
)
)
)
)

01-O-02011

**OPINION ON REVIEW**

### I. INTRODUCTION

Respondent, Francis T. Fahy, requests review of the decision of a hearing judge finding culpability for his failure to notify a client of receipt of funds, failure to maintain client funds in trust, misappropriation involving moral turpitude, and failure to promptly pay client funds. The hearing judge recommended that respondent be actually suspended from the practice of law for eighteen months. Respondent disclaims culpability on all counts; the State Bar urges that respondent should be disbarred.

We have independently reviewed the record (Cal. Rules of Court, rule 9.12; Rules Proc. of State Bar, rule 305(a); *In re Morse* (1995) 11 Cal.4th 184, 207) and find clear and convincing evidence to support the hearing judge's findings of culpability, although we modify her aggravation and mitigation determinations as discussed *post*. We do not adopt the recommended discipline of 18 months' actual suspension but instead recommend two years' actual suspension, with the added condition that respondent shall remain on actual suspension until he establishes his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct.[1]

---

[1]Unless noted otherwise, all further references to "standard(s)" are to this source.

kwiktag®    022 607 320


## II. DISCUSSION

**A.    Factual and Procedural Background**

Respondent was admitted to the practice of law on July 31, 1990, and has no prior record of discipline. In June 1999, Barbara Neal employed respondent to represent her in a personal injury action arising out of a slip-and-fall accident that occurred in October 1998 while she was at a movie theater owned by Dolby Labs, Inc.  Neal executed a retainer agreement providing for attorneys fees of 33 1/3 percent of any amount recovered without a lawsuit and 40 percent of any recovery after a lawsuit was initiated.  The retainer agreement authorized respondent to endorse her signature to all settlement checks "provided that [respondent] immediately distributes to client the client's share of the recovery."  Thereafter, respondent negotiated with Dolby Labs' insurer, Kemper Insurance Company (Kemper) in an attempt to settle Neal's personal injury claim.  Although Kemper denied liability of its insured, it sent respondent a check for medical costs in the amount of $5,000, dated September 30, 1999.  Respondent endorsed Neal's signature on the check, and on October 4, 1999, he deposited it into his client trust account maintained at the Bank of America (CTA) without informing Neal he had received the funds.[2]

Respondent filed a complaint on Neal's behalf in the San Francisco County Superior court on October 13, 1999, but then advised her by letter dated November 20, 1999.(Withdrawal Letter) that he would no longer be able to represent her due to his concerns about the City and County of San Francisco's lien recovery ordinance.[3]  He did not mention the insurance payment

---

[2]Respondent testified that he told Neal that he had received the $5,000 check, although he did not recall the circumstances of the conversation.  The hearing judge did not believe respondent's testimony about the putative conversation.

[3]In this letter, respondent wrote "I recently received a copy of the City and County of San Francisco's lien ordinance.  A copy of it is enclosed.  It is so draconian that I am afraid to continue to represent you in the referenced matter.  I am afraid that due to a clerical error or oversight, I could not only lose my livelihood, and my bar card, but also be subject to conviction for a crime of moral turpitude and receive a prison sentence.  I am not willing to take such a risk. Therefore, this office and I are no longer able to represent you in the refence [sic] matter."

in that letter. Respondent further testified that he sent a second letter on November 20, 1999, the same day that he sent the Withdrawal Letter, advising Neal of the receipt of the $5,000. Neal testified she never received the second letter. The hearing judge found her testimony to be credible and disbelieved respondent's testimony about the second letter.

Between March and May 2000, the balance in respondent's CTA fell below $3,333.33 on several occasions and in May 2000 it dropped as low as 616.72.[4] By May 2000, respondent was formally substituted out of Neal's case, and thereafter he arranged for Neal to pick up her file in June 2000 when she retained new counsel, Shelley Buchanan. Even after he withdrew from Neal's case, respondent never informed Neal or Buchanan about the insurance proceeds. Neal testified that she first learned about the $5,000 during her deposition in November 2000.[5] The hearing judge found this testimony to be credible. After Buchanan demanded reimbursement of the insurance proceeds on November 20, 2000, respondent sent her a check for $5,000 on November 27, 2000, but advised her to retain the funds in trust since respondent had a claim for his fee and costs.

---

[4] According to the retainer agreement, respondent would receive as payment for his services one-third of the amount recovered if settled without suit, or 40 percent of the amount recovered after suit was instituted. Thus, respondent may have been entitled to $1,666.67 in fees since no lawsuit had been filed when he settled with Kemper. Respondent was required to maintain at least $3,333.33 on Neal's behalf, but the balance in his CTA dipped to $2,343.41 on March 23, 2000; $843.41 on March 27, 2000; $2,343.41 on April 6, 2000; $2,488.72 on April 27, 2000; $1,896.72 on May 17, 2000; and $616.72 on May 30, 2000. The hearing judge found that the account balance fell below the required minimum on additional occasions (e.g., $2,283.38 on July 13, 2000; $2,961.97 on November 14, 2000; and $2,703.97 on November 15, 2000), but these findings are not supported by the record because the bank statements from June to November 2000 were not admitted.

[5] According to the record, Neal and Buchanan participated in a settlement conference on an undisclosed date in November 2000 where, according to Buchanan, "some sort of off-handed remark about some payment" was made. Apparently, Buchanan did not follow up on the comment and it was not until Neal's deposition occurred approximately one week later that the attorney for the defendant revealed that a medical payment check had already been issued.

-3-

On December 16, 2003, the State Bar filed a four-count Notice of Disciplinary Charges (NDC) alleging that respondent failed to notify Neal of his receipt of the insurance proceeds (Rules Prof. Conduct, rule 4-100(B)(1)),[6] failed to maintain client funds in trust (rule 4-100(A)), committed an act involving moral turpitude by misappropriating Neal's funds (Bus. & Prof. Code, § 6106),[7] and failed to promptly pay Neal's funds (rule 4-100(B)(4)).  After a three-day trial[8] commencing on January 25, 2005, the hearing judge found respondent culpable on all four charged counts.  The hearing judge also found the following aggravating circumstances: multiple acts of wrongdoing (std. 1.2(b)(ii)); indifference toward rectification or atonement for his misconduct (std. 1.2(b)(v)); conduct surrounded by concealment and dishonesty (std. 1.2(b)(iii)); uncharged misconduct due to the failure to communicate with Neal and the attempt to mislead Buchanan (std. 1.2(b)(iii)); and disrespect to the court resulting in harm to the administration of justice (std. 1.2(b)(iv)).[9]

---

[6]Unless noted otherwise, all further references to "rule(s)" are to the Rules of Professional Conduct.

[7]Unless noted otherwise, all further references to "section(s)" are to the Business and Professions Code.

[8]Prior to trial, respondent filed innumerable pleadings, including a Demand for a Jury Trial, three Motions to Dismiss, a Motion to Strike and a Motion to Enforce a Settlement Agreement.  The hearing judge denied each of these matters.  Respondent does not here contest these rulings and we do not address them further.

[9]Throughout these proceedings, in letters to the court and approximately fifteen filed pleadings, respondent made a series of false and demeaning remarks about the State Bar, its prosecutor in this case, the State Bar Court, and the hearing judge, commencing with his answer to the NDC and continuing until he exhausted his post-trial motions.  Such epithets include, but are not limited to, repeated descriptions of the State Bar and its prosecutors as "frauds, liars and thugs," "hillbilly scum," "criminals," "gangsters," and "incompetent and malignant bunch of yokels."

Respondent also referred to the Hearing Department as a "kangaroo court" that not only "tolerates corruption and perjury" but also employs "jack-booted thugs" who use "nazi tactics." He described the hearing judge as a "willfully corrupt," "prolific liar" who "falsifies the evidence," suffers from "perversion and vile racism" and "needs her head examined." He also claimed the hearing judge "intentionally, fraudulently and maliciously suppressed . . . evidence



The hearing judge found the following factors in mitigation: the absence of a prior record of discipline over nine years of practice (std. 1.2(e)(i)); extreme emotional difficulties due to a "troublesome family situation" (std. 1.2(e)(iv)); pro bono activities; and respondent's repayment of the insurance funds prior to the filing of an NDC (std. 1.2(e)(vii)). The hearing judge did not find an extraordinary demonstration of good character (std. 1.2(e)(vi)), since respondent's two character witnesses were either untrustworthy or unaware of the extent of respondent's misconduct, and collectively, they did not represent a wide range of references in the legal and general communities. Due to the absence of demonstrated prejudice, the hearing judge also declined to find mitigation for the State Bar's delay in conducting the disciplinary proceedings.

The hearing judge recommended that respondent be suspended for three years and until he proves compliance with standard 1.4(c)(ii), stayed, and that he be placed on five years' probation on the condition that he be actually suspended for 18 months.

**B.    Failing to Notify Neal of the Insurance Proceeds (Rule 4-100(B)(1))**

We find meritless respondent's contention that the evidence does not support a finding that he failed to notify Neal of his receipt of the Kemper insurance check. Although respondent testified that he told Neal about the Kemper insurance check within one week of receiving it, he could not recall how he informed her. Respondent's wife, who worked as his legal assistant, also testified that she attended meetings with Neal at respondent's office where respondent not only told Neal about the Kemper check but also that it would have to be retained in trust pending

---

last in . . . her possession" and should be disbarred. Simply because the hearing judge, State Bar prosecutor, and complaining witness are African American, respondent expected the hearing judge to remove herself from the case due to bias. He also threatened to sue the hearing judge but offered to "drop his claims to be filed in the U.S. District Court" in exchange for a dismissal of all charges.

During trial, respondent threw documents on the floor in court instead of handing them to the prosecutor. In a post-trial motion, he referred to the Supreme Court Chief Justice as a racketeering boss, and in another pleading, respondent threatened to file a lawsuit "against Chief Justice George as Chief administrator of the State Bar and his minions and henchmen for the [sic] their scheme to extort California attorneys, theft of the public's money and fraud against the citizens of the State of California and the United States of America."

-5-

resolution of the outstanding lien asserted by the City and County of San Francisco. Respondent's wife could neither recall when these meetings took place nor how many occurred. She further admitted that her memory of these events had faded due to the passage of time. Respondent also relied on a letter he purportedly sent to Neal on November 20, 1999, the same date he sent his Withdrawal Letter to her. In this second letter, respondent advised Neal of the $5,000 insurance check, which he said he planned to hold in trust for medical lien holders pending further negotiation with the City and County of San Francisco.[10] Respondent testified that he sent both letters on the same date by United States registered mail, return receipt requested.

Neal testified that respondent never informed her of his receipt of the Kemper insurance proceeds either orally or in writing, that she met with respondent only once when she retained him, and that the only correspondence she received from him was the Withdrawal Letter. Neal's attorney, Buchanan, testified that she personally picked up Neal's file from respondent and, after careful review, she did not find a copy of the second letter or any other references to the $5,000. Furthermore, Buchanan testified that respondent never mentioned to her that he had received the Kemper check in any of their correspondence or conversations. According to Neal and Buchanan, the first that either of them learned of the Kemper check was during Neal's deposition in November 2000, more than a year after respondent received the funds.

As noted *ante*, the hearing judge did not deem credible the testimony of respondent or his wife and resolved the conflicting evidence regarding the issue of notice of the $5,000 in favor of Neal. We give great deference to the judge's credibility finding and we adopt it. "The hearing [judge] is best suited to resolving credibility questions, because [he or she] alone is able to

---

[10]This second letter stated: "This will confirm that that [sic] you told me you were busy and asked me to sign [the check] for you. I did so and deposited the $5,000 in my attorney-client trust account. ¶ This will also serve to confirm . . . that I am unable to release any of the anticipated med pay funds directly to you but must hold them for medical care lien holders . . . . ¶ . . . As I also explained to you . . . I said I would make an effort to persuade the City & County to allow part of the med pay to be paid to medical care providers other than them."

observe the witnesses' demeanor and evaluate their veracity firsthand. [Citation.]" (*Kelly v. State Bar* (1988) 45 Cal.3d 649, 655; see also Rules Proc. of State Bar, rule 305(a).) Moreover, the record in this case amply supports the hearing judge's credibility determination and demonstrates how inherently implausible is respondent's claim that he sent a second letter notifying Neal of the $5,000. Although the two letters supposedly were written and sent on the same day, neither letter references the other, even though one letter obligates respondent to complete additional work for Neal while the other terminates their relationship. Furthermore, the telephone number listed on the letterhead on the second letter differs from the telephone number listed on the Withdrawal Letter, and the number also differs from respondent's other correspondence from this time period. In fact, the telephone number on the second letter does not begin to appear on respondent's correspondence until 2003, approximately two years *after* respondent allegedly mailed that letter.[11]

Additionally, in respondent's written responses to a State Bar investigator's request for information, dated July 14, and July 26, 2001, he referenced the Withdrawal Letter, yet failed to mention the second letter to Neal. Accordingly, we leave undisturbed the hearing judge's culpability finding that respondent failed to notify Neal of the insurance proceeds in violation of rule 4-100(B)(1).

## C.    Failing to Maintain Client Funds in Trust Account (Rule 4-100(A))

Respondent does not dispute that he was required to maintain $3,333.33 in trust for Neal. Even though his CTA fell below that amount on several occasions, he testified that he believed Neal's funds were "most likely" held in "trust instruments" at Sanwa Bank. According to respondent, he withdrew $1,875 of Neal's funds on January 21, 2000, and $1,280 on May 30,

---

[11]Respondent's correspondence between June 1999 to July 2001 (including his November 20, 1999, Withdrawal Letter that Neal received) lists a telephone number of (415) 621-4548, whereas the letter respondent claims he sent Neal notifying her of his receipt of the Kemper check, also dated November 20, 1999, reflects a telephone number of (415) 759-5834 in a different font size. This latter number does not begin appearing on respondent's correspondence until December 2003.

2000, from his CTA to purchase certificates of deposit or money market certificates on her behalf.[12] Other than a single hand-written page from his ledger, which the hearing judge deemed "suspect," respondent failed to produce any documents to support his contention that Neal's funds were actually held in trust at Sanwa Bank. Indeed, respondent retained copies of interest-bearing money instruments maintained on behalf of other clients, but he could not explain the absence of such copies regarding Neal's funds, nor did he know what happened to the receipts for the money. In addition, respondent could not recall how the Sanwa Bank instruments identified funds as belonging to Neal or who cashed the instruments maintained on her behalf.

Respondent's failure to corroborate his testimony with evidence that one would have expected to be produced is a strong indication that his testimony is not credible.[13] (*In the Matter of Oheb* (Review Dept 2006) 4 Cal. State Bar Ct. Rptr. 920, 935, fn. 13; see also *Rodgers v. State Bar* (1989) 48 Cal.3d 300, 311 [an attorney's failure to keep adequate records is inherently suspicious and can support an inference that his testimony is untrue].) The hearing judge did not believe respondent maintained Neal's funds in trust with Sanwa Bank, and neither do we. Accordingly, we adopt the hearing judge's culpability finding of failing to maintain Neal's funds in trust (rule 4-100(A)).

**D.      Moral Turpitude (Section 6106)**

Respondent contends that he is not culpable of misappropriation, and that in fact "he did the right thing" in withdrawing Neal's funds and placing them with Sanwa Bank. Respondent is wrong. The mere fact that his CTA balance repeatedly fell below the amount he was required to

---

[12]Even if, *arguendo*, this version of events were true, respondent would have been required to maintain at least $1,458.33 in trust between January 21, 2000, and May 30, 2000, when he withdrew $1,200 purportedly to purchase a second money instrument with Sanwa Bank. Despite this, his CTA balance fell to $843.41 on March 27, 2000.

[13]Respondent asserts he could not access his "ledger accounts" that were stored in the basement of the building where he maintained his law office, yet he never explained why he failed to obtain duplicate copies of relevant records from Sanwa Bank, claiming merely that his branch office was moved and then ultimately closed.

-8-

maintain in trust on Neal's behalf supports a finding of wilful misappropriation. (*Giovanazzi v. State Bar* (1980) 28 Cal.3d 465, 474). Although not every misappropriation that is wilful necessarily involves moral turpitude (*Lawhorn v. State Bar* (1987) 43 Cal.3d 1357,1367), here the various acts of concealment of the $5,000 " 'used by [respondent] to further his position were dishonest and involved moral turpitude within the meaning of . . . section 6106 . . . .' " (*Coppock v. State Bar* (1988) 44 Cal.3d 665, 679.) Moreover, respondent's failure to produce financial records "supports an inference that he converted the proceeds to his own use. [Citation.]" (*Greenbaum v. State Bar* (1976) 15 Cal.3d 893, 900; see also *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 515, 516 [misappropriation of client funds for personal use constitutes moral turpitude].) We therefore find clear and convincing evidence that respondent's conduct in concealing the $5,000 from Neal for over one year, and in allowing his CTA account on several occasions to be depleted below the amount he was obligated to maintain on her behalf, demonstrates that respondent wilfully misappropriated the Kemper insurance proceeds, and that these actions involved moral turpitude within the meaning of section 6106. (*McKnight v. State Bar* (1991) 53 Cal.3d 1025, 1033-1034; *Grim v. State Bar* (1991) 53 Cal.3d 21, 30; *Bate v. State Bar* (1983) 34 Cal.3d 920, 923.)

**E.    Failing to Promptly Pay Client Funds (Rule 4-100(B)(4))**

Since respondent did not disburse the medical payment to Neal until more than one year after he received the funds from Kemper, the hearing judge concluded that respondent failed to promptly pay client funds as requested. (Rule 4-100(B)(4).) Respondent argues that he promptly paid the funds within one week after Neal's successor counsel sent him a demand letter on November 20, 2000. Without doubt, a payment request is a required element for a rule 4-100(B)(4) violation.[14] (*Chefsky v. State Bar* (1984) 36 Cal.3d 116, 126-127; *In the Matter of*

---

[14]This rule provides that "A member shall: [¶] . . . [¶] (4) Promptly pay or deliver, *as requested by the client,* any funds, securities, or other properties in the possession of the member which the client is entitled to receive." (Emphasis added.)

-9-

*Nelson* (Review Dept. 1990) 1 Cal. State Bar Ct. Rptr 178, 188.) The State Bar contends that the express terms of the retainer agreement in effect constituted a continuing request by Neal for payment once respondent had endorsed the Kemper check, which occurred in October 1999.[15] We agree. The retainer agreement reflects the mutual understanding between Neal and respondent that he was only authorized to endorse the Kemper check provided he "immediately" distributed the funds to Neal. This contractual provision obviated Neal's express demand for the insurance proceeds and constituted an implied and continuing request for payment of the funds once respondent had endorsed Neal's signature. (See *In the Matter of Steele* (Review Dept. 1997) 3 Cal. State Bar Ct. Rptr. 708, 718-719 [client's requests for settlement documentation implied a request for disbursement of the settlement funds].)

### III. DISCIPLINE

A.    **Factors in Aggravation and Mitigation**

   **1. Aggravation**

   We agree with the hearing judge's determination that respondent engaged in multiple acts of wrongdoing. Respondent failed to notify Neal of his receipt of the insurance proceeds, he did not maintain the funds in a trust account, he willfully misappropriated the proceeds for his own benefit and he failed to promptly pay her. These acts support a finding in aggravation that respondent engaged in multiple acts of misconduct. (See *In the Matter of Malek-Yonan* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 627 [two violations of failure to supervise resulting in trust fund violations, plus improper threat to bring criminal action constituted multiple acts of wrongdoing in aggravation].) However, we do not consider this as strong evidence in aggravation. (*In the Matter of Blum* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 170, 177 [one client matter involving misappropriation, failure to promptly pay funds at client's request

---

   [15]The retainer agreement stated that respondent could only "endorse client's signature to all settlement checks, provided that attorney immediately distributes to client the client's share of the recovery."

and failure to inform client of right to seek independent counsel, plus failure to report sanctions in another client matter were not viewed by this court "as strongly presenting aggravation on account of multiple acts of misconduct . . . ."].)

The hearing judge also found in aggravation that respondent "deliberately undertook an effort to conceal the existence of the $5,000 from Neal and her attorney." (Std. 1.2(b)(iii).) The record supports this finding since respondent did not include any documentation relating to the Kemper payment of $5,000 in the file he released to Neal's successor counsel, and he never mentioned the Kemper check to either Neal or her new attorney despite numerous conversations and correspondence. However, these acts of concealment also form the basis of respondent's culpability for violating section 6106, and therefore we do not assign it any additional weight as aggravation. (*In the Matter of Davis* (Review Dept. 2003) 4 Cal. State Bar Ct. Rptr. 576, 595; *In the Matter of Trillo* (Review Dept.1990) 1 Cal. State Bar Ct. Rptr. 59, 69.)

The hearing judge found in aggravation that respondent was culpable of uncharged misconduct under section 6068, subdivision (m) arising from respondent's failure to communicate with Neal when he did not return her calls on numerous occasions after June 15, 1999. She determined there was additional uncharged misconduct as a result of an act involving moral turpitude when respondent subpoenaed Buchanan and used the State Bar as the return address on the envelope. The hearing judge found that this was an attempt to mislead Buchanan into believing that the State Bar Court issued the subpoena. We do not find clear and convincing evidence to support these determinations. Although Neal testified that she called respondent about twenty times to get an update on her case in September or October 1999, it does not appear that respondent failed to respond eventually. In fact, Neal testified that she was able to speak with respondent and even scheduled a meeting with him. Although respondent ultimately did not attend the scheduled meeting, the following day he explained to Neal the reason for his absence. We also do not find clear and convincing evidence that respondent intended to mislead Buchanan about the subpoena since we believe respondent's explanation is plausible that he used the State

-11-

Bar as the return address on the subpoena envelope because he did not want Buchanan to contact him after she received the subpoena.

However, we conclude that the record supports a finding of uncharged misconduct in aggravation not found by the hearing judge in that respondent did not provide an accounting to Neal after he withdrew from employment (rule 4-100(B)(3))[16] and because he threatened to report Buchanan to the State Bar if she did not pay him the attorney fee he believed he was owed (rule 5-100(A)).[17] (See *Edwards v. State Bar* (1990) 52 Cal.3d 28, 36 [while evidence of uncharged misconduct may not be used as an independent ground of discipline, it may be considered in aggravation where the evidence is elicited for a relevant purpose and where the determination of uncharged misconduct is based on the attorney's own evidence].)

We adopt the hearing judge's finding in aggravation that respondent demonstrated indifference toward rectification of or atonement for the consequences of his misconduct. (Std. 1.2(b)(v).) Throughout these proceedings, respondent expressed disdain for the disciplinary process, and post-trial, he mockingly described the attribute of atonement as ". . . a religious ritual Jews engage in . . ." and declared that he "refuses to convert to keep his Bar card."

Finally, we agree with the hearing judge's finding that respondent's repeated acts of disrespect towards the State Bar Court and the disciplinary process harmed the administration of justice. (Std. 1.2(b)(iv).) Respondent's invectives against the prosecutor, the hearing judge and the State Bar in his pleadings and correspondence, as described in footnote 9 *ante*, were not merely the offhand comments of a disgruntled attorney, but were, as respondent's counsel

---

[16]Rule 4-100(B)(3) requires a member to render appropriate accounts to the client regarding all funds of the client coming into possession of the member.

[17]Rule 5-100(A) prohibits a member from threatening "to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."

-12-

properly characterized them, "unfortunate."[18] Given the nature and extent of respondent's inappropriate conduct, we observe that the prosecutor and the hearing judge "performed creditably under extremely trying circumstances." (*Lebbos v. State Bar* (1991) 53 Cal.3d at 37, 49.) Although he asserts there are mitigating circumstances that would explain his behavior (which we address below), there is an acknowledgment in his brief that the claimed mitigation "does not excuse his behavior."

### 2. Mitigation

We adopt all but one of the hearing judge's findings concerning mitigation and we also find an additional mitigating circumstance. We afford no mitigation to respondent's emotional difficulties and anger stemming from his "troublesome family situation." Respondent was engaged in a protracted and heated child custody battle which resulted in an arrest and criminal charges against him. Respondent testified at length in the hearing below about his perception that he was persecuted by the judiciary and law enforcement in Marin County.[19] Nevertheless, as the State Bar correctly points out, there is no clear and convincing evidence that respondent's emotional difficulties caused him to commit the alleged misconduct.[20] Further, respondent

---

[18]Respondent's counsel also described respondent's disrespectful harangues as "unique" but unfortunately this is not necessarily true. (See e.g., *Lebbos v. State Bar* (1991) 53 Cal.3d 37, 42, fn. 5.)

[19]Respondent characterized the family law department of the Superior Court of Marin County as a racketeer-influenced, criminal organization and admitted that he was suing practically all the judges in that county. He also claimed that law enforcement in Marin County harassed him, intimidated him and treated him like a criminal. According to respondent, the "[j]udges conspired with the sheriffs there, and the district attorney charged me solely in retaliation for my complaining about the conduct there." For multiple days during trial in his disciplinary matter, respondent displayed behind his chair in court a blown-up picture of someone respondent described as a deputy in Marin County who used a dog to prevent him from going into court by driving him out of the courtroom into an elevator.

[20]With respect to his battle with his ex-wife over custody of the children and how it affected his conduct in the Neal matter, respondent testified ". . . I don't think it affected my

-13-

presented no evidence, expert or otherwise, that he no longer suffers from his emotional problems. (Std. 1.2(e)(iv).)

We agree with the hearing judge that respondent's payment of $5,000 prior to the filing of a State Bar complaint in January 2001 is entitled to significant consideration as a mitigating factor. (*Lawhorn v. State Bar, supra,* 43 Cal.3d at p. 1366.)

Respondent testified that he performed "a couple hundred hours" of pro bono work related to family law in 1997 and represented four clients pro bono in 1999. Although respondent's sporadic pro bono work deserves consideration as a mitigating factor (see *In the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 631, 647-648), on this record, we find it neither compelling nor worthy of significant weight. (See, e.g., *Gadda v. State Bar* (1990) 50 Cal.3d 344, 356 [attorney's four years of pro bono work resulting in several letters and certificates of commendation demonstrated a zeal in pro bono work deserving of mitigating weight].)

The hearing judge did not acknowledge as mitigation respondent's cooperation with the State Bar by entering into a factual stipulation covering background facts in the matter after trial commenced. Although the stipulated facts were not difficult to prove and did not admit culpability, they were, nevertheless, relevant and assisted the State Bar's prosecution of the case. Thus, we give respondent's factual stipulation modest mitigative weight under standard 1.2(e)(v). (See *In the Matter of Kaplan* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 547, 567 [attorney afforded mitigation for entering belated stipulations which mostly concerned easily provable facts].)

-----

ability to practice or anything, other than that I had to take time out to find out what was going on with the children . . . ."

-14-

## B.  Level of Discipline

The hearing judge recommended that respondent be actually suspended from the practice of law for eighteen months.  Respondent seeks dismissal of all charges and therefore no imposition of discipline.[21]  The State Bar maintains that "the presumptive level of discipline for misappropriation is disbarment," citing standard 2.2(a) as the basis for its contention.[22]  We also consider standard 2.3,[23] although we agree with the State Bar that standard 2.2(a) is the most appropriate because it proposes the most severe of the sanctions.  (Std. 1.6(a).)

In determining the appropriate level of discipline, we afford great weight to the standards (*In re Silverton* (2005) 36 Cal.4th 81, 92), but we do not believe standard 2.2(a) establishes a presumption in favor of disbarment as asserted by the State Bar.  In fact, the standards are considered by the Supreme Court as "simply guidelines." (*Greenbaum v. State Bar* (1987) 43 Cal.3d 543, 550; *Howard v. State Bar* (1990) 51 Cal.3d 215, 221-222.)  Indeed, in many misappropriation cases that post-date the implementation of the standards, the court has imposed discipline less severe than disbarment.  (E.g., *Boehme v. State Bar* (1988) 47 Cal.3d 448, 451-452, 454.)

---

[21]In his Notice of Errata, respondent asserts that "if culpability is found, the level of discipline should be less than 18 months actual suspension with appropriate conditions of probation."

[22]Standard 2.2(a) provides for disbarment unless "the amount of the funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate . . . .  In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances."

[23]Standard 2.3 provides: "Culpability of a member of an act of moral turpitude . . . or of concealment of a material fact to a court, client or another person shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."

We look to prior discipline decisions for additional guidance, giving consideration to those misappropriation cases based on similar facts. The Supreme Court has stated that the "'usual'" discipline for willful misappropriation is disbarment (*Edwards v. State Bar, supra,* 52 Cal.3d at p. 37; *Howard v. State Bar, supra,* 51 Cal.3d at p. 221), although it has qualified this statement on several occasions with the observation that "'only the most serious instances of repeated misconduct and multiple instances of misappropriation have warranted actual suspension, much less disbarment. [Citations.] A year of actual suspension, if not less, has been more commonly the discipline imposed in our published decisions involving but a single instance of misappropriation.'" (*Hipolito v. State Bar* (1989) 48 Cal.3d 621, 628, citing *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357, 1367-68 and numerous other cases at p. 628, fn. 4.)

Respondent misappropriated $2,716.61 ($5,000 minus his fee of $3,333.33 minus the CTA balance of $616.72). We consider this as a significant sum (*Lawhorn v. State Bar, supra,* 43 Cal.3d at pp. 1367-1368 [misappropriation of $1,355.75 considered significant]), but a single misappropriation of this amount has not necessarily resulted in disbarment, even when, as here, the misappropriation involved deceit and/or other acts of moral turpitude. (*McKnight v. State Bar, supra,* 53 Cal.3d 1025,1029, 1032; *Edwards v. State Bar, supra,* 52 Cal.3d 28; *Boehme v. State Bar, supra,* 47 Cal.3d 448; *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357.) We further observe that respondent's misappropriation was accompanied by acts of deceit, and, perhaps most significantly, respondent has shown a lack of remorse and disrespect of the disciplinary process. However, at the time of the misconduct, respondent had practiced law for nine years with no prior history of discipline and there is no evidence of subsequent misconduct. Based on these factors, we consider the cases set forth below as most pertinent, noting that the range of discipline is from one year to two years' actual suspension.

*Boehme v. State Bar, supra,* 47 Cal.3d 448, is a case with strikingly similar facts, involving an attorney who misappropriated a client's personal injury settlement in the amount of $2,495.13. The misappropriation was not only wilful, but it involved moral turpitude and

-16-

dishonesty. (*Id.* at pp. 451-452.) Like respondent in the instant case, Boehme's explanation for his non-payment of the settlement was at best far-fetched, consisting of a purported payment to a bookmaker on his client's behalf. (*Id.* at. p. 452.) Moreover, as with the instant case, Boehme failed to appreciate the seriousness of his wrongdoing or demonstrate any repentance, and he presented only two character witnesses. (*Id.* at p. 452.). Boehme offered as evidence a "life-threatening" medical condition, but this condition arose after the misappropriation, and therefore was only considered in the context of his ability to repay the client and not as mitigation for the misappropriation. (*Id.* at p. 451.) Additional serious aggravating factors present in the *Boehme* case, but not present in the instant case, included his lack of candor to the court and his failure to make any restitution. (*Id.* at p. 452.) Nevertheless, the Supreme Court declined to apply standard 2.2 and rejected our recommendation of disbarment, concluding it was "too harsh" because there was but a single instance of misappropriation and no prior misconduct in twenty-two years of practice. (*Id.* at p. 454.) Instead, the court concluded that a five-year stayed suspension, five years' probation and an 18-month actual suspension was sufficient. (*Id.* at p. 450.)

In *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357, another case with very similar facts, the Supreme Court again rejected our recommendation of disbarment, finding it to be "excessive discipline" (*id.* at p. 1360), and instead imposed two years' actual suspension. Lawhorn intentionally misappropriated $1,355.75 of his client's personal injury settlement and misrepresented to his client that his trust account had been frozen by his ex-wife. Lawhorn's client tried on 28 occasions to reach him about payment and finally advised him in a message that she intended to refer the matter to the State Bar. At that point, Lawhorn paid the client in full, including interest, which the Supreme Court accorded mitigative weight because the repayment occurred before Lawhorn learned of the actual filing of the State Bar complaint. (*Id.* at p. 1366.) While acknowledging that disbarment was suggested by the standards (*id.* at p. 1366), the court stressed that the matter involved a single instance of misappropriation (*id.* at p.

-17-

1367), and therefore the court had grave doubts about the applicability of the standards. (*Id.* at p. 1366.) Unlike the instant case, where respondent has nine years of practice with no prior discipline, Lawhorn had only four years of discipline-free practice.

*McKnight v. State Bar, supra,* 53 Cal.3d 1025, is another case with similar misconduct where an attorney with no prior disciplinary history engaged in acts of moral turpitude arising from the misappropriation of client trust funds and additional misconduct involving the failure to deposit funds into a trust account, failure to promptly notify a client of receipt of funds, and failure to promptly deliver client funds. However, the amount of funds misappropriated in *McKnight* was in excess of $17,000, and, in addition, the attorney improperly entered into a business transaction with his client. The attorney repaid only half of the funds (and then only after the client had filed a complaint with the State Bar). In mitigation, the court gave weight to several attorneys who testified on the attorney's behalf, but gave only minimal weight to medical testimony that he was manic-depressive because there was no causal connection established between his mental illness and the misappropriations. (*Id.* at p. 1038.) In spite of the large amount of funds misappropriated and a finding that the attorney lacked remorse and appreciation of the seriousness of his wrongdoing (*id.* at pp. 1036-37), the Supreme Court did not adopt the disbarment recommendation of standard 2.2(a). Instead, the court ordered the attorney to be actually suspended for one year because it considered the attorney's 10 years of practice without discipline as evidence the misconduct was "isolated and aberrational." (*Id.* at p. 1037.) This court also has been unwilling to mechanically apply standard 2.2(a) in misappropriation cases where we felt the facts did not warrant such a severe discipline as disbarment. The case of *In the Matter of McCarthy* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 364 involved a far larger misappropriation over a longer period of time than that which occurred here. In the *McCarthy* case, an attorney, acting as a general partner, refused over a period of several years to distribute more than $20,000 of partnership funds to a limited partner and instead used these funds for his own purposes. (*Id.* at p. 374.) We found this conduct constituted willful misappropriation

-18-

involving moral turpitude. (*Id.* at p. 368.) We further found the attorney concealed the funds from his partner (*id.* at p. 381), and sought to have his partner withdraw his State Bar complaint. (*Id.* at p. 368.) In aggravation, we found the attorney's conduct was surrounded by concealment and harmed his client, the attorney failed to make any restitution, and he demonstrated indifference and a lack of remorse. (*Id.* at pp. 383, 385.) We did not consider as an extraordinary demonstration of good character the testimony of two associates and the attorney's wife. However, we did not adopt the disbarment specified by standard 2.2(a) even though the amount involved was significant and mitigating circumstances did not clearly predominate. (*Id.* at p. 384.) Instead, we recommended a four-year stayed suspension, three years of probation with a two-year actual suspension because "all of the misconduct found resulted from a single failure to distribute funds." (*Id.* at p. 385.) In view of the attorney's 40 years' of practice with no prior record of discipline, the misconduct appeared to be "aberrational." (*Ibid.*)

In *In the Matter of Davis, supra,* 4 Cal. State Bar Ct. Rptr. 576, Davis became embroiled in an intra-corporate dispute and ultimately misappropriated over $79,000 of settlement proceeds belonging to the corporation. Davis also failed to account to the board of directors in spite of repeated demands for an accounting. The misconduct was aggravated by significant client harm, overreaching, indifference toward atonement and uncharged misconduct due to multiple conflicts of interest. (*Id.* at p. 592.) We were particularly troubled by Davis' failure to make any restitution to his client, as well as his "various acts of concealment and duplicity. . . ." (*Id.* at p. 596.) Even though we found that Davis' misconduct was "on the more serious end of the [disciplinary] continuum" (*id.* at p. 595) and the substantial mitigation evidence was outweighed by even more serious evidence in aggravation (*id.* at p. 596), we did not adopt disbarment as specified by standard 2.2(a). (*Id.* at p. 596.) Instead, we recommended a four-year stayed suspension, four years of probation with a two-year actual suspension because the misconduct was directed towards a single client and Davis had twelve years of practice with no history of discipline. (*Id.* at p. 596.) We were also impressed with the strength of the testimony of his

-19-

character witnesses and his extensive community service as well as the fact that there was no evidence of additional misconduct after the misappropriation that had occurred more that five years previously. (*Id.* at p. 596; see also *In the Matter of Hertz* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 456 [two-year actual suspension for attorney who disbursed without authorization $15,000 held in trust for client and client's ex-spouse, keeping $5,000 as his own fees, with protracted deceit as to whereabouts of the funds, but mitigation evidence from six character witnesses (including three judges) and evidence of substantial community service]; *In re Trillo, supra,* 1 Cal. State Bar Ct. Rptr 59 [one-year actual suspension for attorney who converted $2,500 in advanced fees and costs without performing services and deceived his clients, aggravated by significant harm to clients, failure to cooperate or to pay restitution, and non-participation in the proceedings, but no prior history of discipline in fourteen years of practice].)

The State Bar cites to *Chang v. State Bar* (1989) 49 Cal.3d 114 in support of its recommendation of disbarment. *Chang* has some similarities to the instant case in that it concerned an attorney with no prior record of discipline who, in one instance, intentionally misappropriated over $7,000 from his trust account for his own purposes and then concealed this fact for several months. But we find *Chang* is not as persuasive as the other discipline cases cited above because the Supreme Court, in ordering Chang's disbarment, focused on his refusal to repay the misappropriated money in spite of repeated demands to do so, and his additional acts of moral turpitude arising out of his lies to the State Bar investigator, which fraudulently delayed the investigation and his "contrived misrepresentations" before the hearing panel, which also hindered its fact-finding function. (*Id.* at p. 128.) These factors, together with his failure to acknowledge the impropriety of his misconduct were offered by the court as "reasons to doubt whether he will conform his future conduct to the professional standards demanded of California attorneys." (*Id.* at p. 129.)  In contrast, respondent, repaid the money as soon as Buchanan demanded it and before any complaint was made to the State Bar.  Further, although the hearing

-20-

judge made several credibility determinations adverse to respondent, she did not find he lacked candor.

In support of its disbarment recommendation the State Bar also cites to *In the Matter of Varakin* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 179. We find this case to be inapposite. *Varakin* is not a misappropriation case but rather a situation where an attorney over a dozen years abused the judicial system by pursuing "a relentless pattern of filing motions and appeals which were manifestly frivolous . . . ." (*In the Matter of Varakin, supra,* 3 Cal. State Bar Ct. Rptr. at p. 190.) He continued this harassment in spite of many substantial sanctions. (*Ibid.*) We concluded that although we held out little hope of preventing Varakin from continuing to abuse the legal system, at the very least disbarment would "prevent him from continuing his abusive course of conduct under the cloak of authority conferred on him by his membership in the bar." (*Id.* at. p. 191.)

Ultimately, each case must be decided on its own facts. (*Connor v. State Bar* (1990) 50 Cal.3d 1047, 1059.) This would be a prototypical misappropriation case but for respondent's unwillingness or inability to appreciate the impropriety of his conduct and his manifest disrespect for the State Bar, the State Bar Court and the hearing judge. Tempering these serious concerns is the fact that respondent's misconduct was directed toward one client and constitutes a single instance of misappropriation of $2,716.61, and respondent has no prior record of discipline. Moreover, his misconduct occurred more than five years ago without any evidence of additional misconduct since that time, which may be considered as a factor in deciding the appropriate discipline. (*Chefsky v. State Bar, supra,* 36 Cal.3d 116, 132; *In the Matter of Davis, supra,* 4 Cal. State Bar Ct. Rptr. at p. 596.) We also note respondent's willingness to enter into a partial stipulation of facts, as well as his payment of restitution before a complaint was filed with the State Bar. After a balanced consideration of all relevant factors, including the standards and other disciplinary cases, we conclude that respondent's misconduct warrants two years' actual

-21-

suspension, which is less severe than the disbarment suggested by the State Bar but more serious than that recommended by the hearing judge.

The State Bar asserts in its brief on appeal that its "main concern with the Hearing Department's recommendation is that respondent would be allowed to resume practice without establishing rehabilitation. . . ." Given respondent's refusal to accept responsibility for his wrongdoing and his lack of remorse and respect for these disciplinary proceedings, we agree. In order to protect the public, preserve confidence in the legal profession and maintain the professional standards for attorneys (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; std. 1.3), we further recommend that respondent's actual suspension be coupled with the condition that it remain in place until he establishes his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii).[24]

## IV. RECOMMENDATION

We recommend that respondent FRANCIS T. FAHY be suspended from the practice of law in the State of California for a period of three years; that execution of the three-year period of

---

[24] At oral argument, and subsequently by order dated October 24, 2006, we asked for additional briefing by the parties as to whether or not a basis exists for a referral of respondent to the Hearing Department for a probable cause determination for involuntary inactive enrollment pursuant to section 6007, subdivision (b)(3) as the result of respondent's disrespectful conduct towards the hearing judge and the prosecutor. (See *Newton v. State Bar* (1983) 33 Cal.3d 480.) The State Bar filed its Memorandum on November 7, 2006. In its memorandum, the State Bar asserted that while respondent "demonstrated a contemptuous and obstreperous attitude" and is "a very troubled and angry person," there is no evidence that he possesses a disabling mental illness, citing *Lebbos v. State Bar, supra,* 53 Cal.3d 37, *Weber v. State Bar* (1988) 47 Cal.3d 492, and *Alberton v. State Bar* (1984) 37 Cal.3d 1, as cases involving similar examples of contemptuous behavior which did not result in a referral for a determination of mental infirmity or illness. The State Bar also points out that the hearing judge, who saw and heard respondent throughout these proceedings, did not indicate a concern for respondent's mental state or competency. Respondent filed a responsive memorandum on January 25, 2007, disputing the State Bar's characterization of him as contemptuous and abusive. Upon giving this matter our consideration, and having reviewed the record de novo, we determine there is not substantial evidence indicating that a referral pursuant to section 6007, subdivision (b)(3) is warranted.

suspension be stayed; and that he be placed on probation for a period of three years on the following conditions:

1.   That respondent be actually suspended from the practice of law in the State of California during the first twenty-four months of probation and until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct.

2.   Respondent must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all the conditions of this probation. Respondent must maintain, with the State Bar's Membership Records Office *and* the State Bar's Office of Probation in Los Angeles, his current office address and telephone number or, *if no office is maintained,* an address to be used for State Bar purposes. (Bus. & Prof. Code, § 6002.1, subd. (a).) Respondent must also maintain, with the State Bar's Membership Records Office·*and* the State Bar's Office of Probation in Los Angeles, his current home address and telephone number. (See Bus. & Prof. Code, 6002.1, subd. (a)(5).) Respondent's home address and telephone number will *not* be made available to the general public. (Bus. & Prof. Code, 6002.1, subd. (d).) Respondent must notify the Membership Records Office and the Office of Probation of any change in any of this information no later than 10 days after the change.

3.   Respondent must report, in writing, to the State Bar's Office of Probation in Los Angeles no later than January 10, April 10, July 10 and October 10 of each year or part thereof in which respondent is on probation (reporting dates). However, if respondent's probation begins less than 30 days before a reporting date, respondent may submit the first report no later than the second reporting date after the beginning of his probation. In each report, respondent must state that it covers the preceding calendar quarter or applicable portion thereof and certify by affidavit or under penalty of perjury under the laws of the State of California as follows:

    (a)   in the first report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation since the beginning of probation; and

    (b)   in each subsequent report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation during that period.

    (c)   if respondent possesses client funds at any time during the period covered by a required quarterly report, respondent must file with each required report a certificate from respondent and a certified public accountant or other financial professional approved by the Office of Probation, certifying that respondent has maintained a bank account in a bank authorized to do business in the State of California, at a branch located within the State of California, and that such account is designated as a "Trust Account" or Client's Funds Account," and that respondent has kept and maintained the following:

-23-

suspension be stayed; and that he be placed on probation for a period of three years on the following conditions:

1.  That respondent be actually suspended from the practice of law in the State of California during the first twenty-four months of probation and until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct.

2.  Respondent must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all the conditions of this probation. Respondent must maintain, with the State Bar's Membership Records Office *and* the State Bar's Office of Probation in Los Angeles, his current office address and telephone number or, *if no office is maintained*, an address to be used for State Bar purposes. (Bus. & Prof. Code, § 6002.1, subd. (a).) Respondent must also maintain, with the State Bar's Membership Records Office *and* the State Bar's Office of Probation in Los Angeles, his current home address and telephone number. (See Bus. & Prof. Code, 6002.1, subd. (a)(5).) Respondent's home address and telephone number will *not* be made available to the general public. (Bus. & Prof. Code, 6002.1, subd. (d).) Respondent must notify the Membership Records Office and the Office of Probation of any change in any of this information no later than 10 days after the change.

3.  Respondent must report, in writing, to the State Bar's Office of Probation in Los Angeles no later than January 10, April 10, July 10 and October 10 of each year or part thereof in which respondent is on probation (reporting dates). However, if respondent's probation begins less than 30 days before a reporting date, respondent may submit the first report no later than the second reporting date after the beginning of his probation. In each report, respondent must state that it covers the preceding calendar quarter or applicable portion thereof and certify by affidavit or under penalty of perjury under the laws of the State of California as follows:

    (a)  in the first report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation since the beginning of probation; and

    (b)  in each subsequent report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation during that period.

    (c)  if respondent possesses client funds at any time during the period covered by a required quarterly report, respondent must file with each required report a certificate from respondent and a certified public accountant or other financial professional approved by the Office of Probation, certifying that respondent has maintained a bank account in a bank authorized to do business in the State of California, at a branch located within the State of California, and that such account is designated as a "Trust Account" or Client's Funds Account," and that respondent has kept and maintained the following:

-23-

suspension, which is less severe than the disbarment suggested by the State Bar but more serious than that recommended by the hearing judge.

The State Bar asserts in its brief on appeal that its "main concern with the Hearing Department's recommendation is that respondent would be allowed to resume practice without establishing rehabilitation. . . ." Given respondent's refusal to accept responsibility for his wrongdoing and his lack of remorse and respect for these disciplinary proceedings, we agree. In order to protect the public, preserve confidence in the legal profession and maintain the professional standards for attorneys (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; std. 1.3), we further recommend that respondent's actual suspension be coupled with the condition that it remain in place until he establishes his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii).[24]

## IV. RECOMMENDATION

We recommend that respondent FRANCIS T. FAHY be suspended from the practice of law in the State of California for a period of three years; that execution of the three-year period of

---

[24]At oral argument, and subsequently by order dated October 24, 2006, we asked for additional briefing by the parties as to whether or not a basis exists for a referral of respondent to the Hearing Department for a probable cause determination for involuntary inactive enrollment pursuant to section 6007, subdivision (b)(3) as the result of respondent's disrespectful conduct towards the hearing judge and the prosecutor. (See *Newton v. State Bar* (1983) 33 Cal.3d 480.) The State Bar filed its Memorandum on November 7, 2006. In its memorandum, the State Bar asserted that while respondent "demonstrated a contemptuous and obstreperous attitude" and is "a very troubled and angry person," there is no evidence that he possesses a disabling mental illness, citing *Lebbos v. State Bar, supra,* 53 Cal.3d 37, *Weber v. State Bar* (1988) 47 Cal.3d 492, and *Alberton v. State Bar* (1984) 37 Cal.3d 1, as cases involving similar examples of contemptuous behavior which did not result in a referral for a determination of mental infirmity or illness. The State Bar also points out that the hearing judge, who saw and heard respondent throughout these proceedings, did not indicate a concern for respondent's mental state or competency. Respondent filed a responsive memorandum on January 25, 2007, disputing the State Bar's characterization of him as contemptuous and abusive. Upon giving this matter our consideration, and having reviewed the record de novo, we determine there is not substantial evidence indicating that a referral pursuant to section 6007, subdivision (b)(3) is warranted.

i. a written ledger for each client on whose behalf funds are held that sets forth the name of such client; the date, amount and source of all funds received on behalf of such client; the date amount, payee and purpose of each disbursement made on behalf of such client; and the current balance for such client;

ii. a written journal for each client trust fund account that sets forth the name of such account; the date, amount, and client affected by each debit and credit; and the current balance in such account;

iii. all bank statements and canceled checks for each client trust account; and

iv. each monthly reconciliation (balancing) of (i), (ii), and (iii) above, and if there are any differences between the monthly total balances reflected in (i), (ii), and (iii) above, the reason for the differences, and that respondent has maintained a written journal of securities or other properties held for a client that specifies each item of security and property held; the person on whose behalf the security or property is held; the date of receipt of the security or property; the date of distribution of the security or property; and the person to whom the security or property was distributed.

(d) If respondent does not possess any client funds, property or securities during the entire period covered by a report, respondent must so state under penalty of perjury in the report filed with the Office of Probation for that reporting period. In this circumstance, respondent need not file the accountant's certificate described above.

(e) The requirements of this condition are in addition to those set forth in rule 4-100 of the Rules of Professional Conduct.

During the last 20 days of this probation, respondent must submit a final report covering any period of probation remaining after and not covered by the last quarterly report required under this probation condition. In this final report, respondent must certify to the matters set forth in subparagraph (b) of this probation condition by affidavit or under penalty of perjury under the laws of the State of California.

4. Within 30 calendar days from the effective date of the Supreme Court's final disciplinary order in this proceeding, respondent must contact the Office of Probation and schedule a meeting with his assigned probation deputy to discuss probation conditions. At the direction of the Office of Probation, respondent must meet with the probation deputy either in person or by telephone. During the period of probation, respondent must meet promptly with the probation deputy as directed and upon request.

5. Subject to the proper or good faith assertion of any applicable privilege, respondent must fully, promptly, and truthfully answer any inquiries of the State Bar's Office of Probation that are directed to respondent, whether orally or in writing, relating to whether respondent is complying or has complied with the conditions of this probation.

6. Within one year after the effective date of the Supreme Court order in this matter, respondent must attend and satisfactorily complete the State Bar's Ethics School and Client Trust Accounting School and provide satisfactory proof of such completion to the

-24-

State Bar's Office of Probation in Los Angeles. This condition of probation is separate and apart from respondent's California Minimum Continuing Legal Education (MCLE) requirements; accordingly, respondent is ordered not to claim any MCLE credit for attending and completing these courses. (Accord, Rules Proc. of State Bar, rule 3201.)

7.    Within one year of the effective date of the discipline herein, respondent must submit to the Office of Probation satisfactory evidence of completion of no fewer than two hours of MCLE-approved courses in anger management. Respondent must obtain approval from the Office of Probation prior to enrolling in any such course. This condition of probation is separate and apart from respondent's MCLE requirements; accordingly, respondent is ordered not to claim any MCLE credit for attending and completing these courses. (Accord, Rules Proc. of State Bar, rule 3201.)

8.    Respondent's probation will commence on the effective date of the Supreme Court order imposing discipline in this matter. At the end of the probationary term, if respondent has complied with the conditions of probation, the Supreme Court order suspending respondent from the practice of law for three years will be satisfied, and the suspension will be terminated.

## V. PROFESSIONAL RESPONSIBILITY EXAMINATION

We further recommend that respondent be ordered to take and pass the Multistate Professional Responsibility Examination administered by the National Conference of Bar Examiners during the period of his actual suspension in this matter and to provide satisfactory proof of such passage to the State Bar's Office of Probation in Los Angeles within the same period.

## VI. RULE 9.20

We further recommend that respondent be ordered to comply with rule 9.20 of the California Rules of Court and to perform the acts specified in paragraphs (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of the Supreme Court order in this matter.

## VII. COSTS

We further recommend that the costs incurred by the State Bar in this matter be awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable as provided in Business and Professions Code section 6140.7 and as a money judgment.

EPSTEIN, J.

We concur:

WATAI, Acting P. J.

STOVITZ, J.*

---

*Retired Presiding Judge of the State Bar Court, serving by designation of the Presiding Judge

-26-

# CERTIFICATE OF SERVICE
## [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on February 23, 2007, I deposited a true copy of the following document(s):

## OPINION ON REVIEW FILED FEBRUARY 23, 2007

in a sealed envelope for collection and mailing on that date as follows:

[X]  by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

**FRANCIS T. FAHY**
**259 OAK ST**
**SAN FRANCISCO, CA  94102**

[X]  by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**DONALD R STEEDMAN, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on **February 23, 2007**.

**Rosalie Ruiz**
Case Administrator
State Bar Court

**EXHIBIT C**

S151939

SUPREME COURT
FILED

MAY 2 2007

Frederick K. Ohlrich Clerk

## SUPREME COURT OF CALIFORNIA

Case No _____

In The Matter of Francis T. Raby, SBN 147721

A Member of the State Bar

Petitioner

v.

The State Bar of California

Respondent

RECEIVED

MAY 21 2007

CLERK SUPREME COURT

Petition for Writ of Review of State Bar State Bar Proceeding No. 01-O-02011-PEM

[Orig. Juris. (Bus. & Prof. Code §§6082, 6086; Cal. Rules of Ct. Rule 9.13(b)]

Francis T. Raby, SBN 147721
259 Oak Street
San Francisco, CA 94102
(415) 863-4418
Petitioner in Pro. Per.

TO THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF
THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Petitioner, pursuant to Business and Professions Code Sections 6082 through
6084 and California Rules of Court, Rule 9.13 (a), respectfully requests that this court
issued its writ of review to reverse the opinions, rulings, decision and recommendations
of the respondent State Bar Court and State Bar Court Review Department
recommending the petitioner be suspended from the practice of law.

In support of this petition, petitioner alleges:

1.      Petitioner was admitted to the State Bar of California on July 31, 1990,
and, since that date, petitioner has been an active member in good standing of the state
bar and engaged in the practice of law in San Francisco, California.

2.      On or about 2003 respondent State Bar of California initiated proceedings
against the petitioner on the complaint of petitioner's former client, Barbara Neal.
Respondent State Bar of California, through its office of investigation, conducted an
investigation into alleged professional misconduct by petitioner.

3.      On or about December 1, 2003 respondent State Bar of California through
its Office of Trial Counsel tendered a settlement offer which the respondent accepted.
The offer in settlement and its acceptance is attached as Exhibit A1 and A2, made a part
here, pages 1 to 19 of Petitioner's Exhibits in Support of Petition for Writ of Review, Vol
1.

4.      On December 16, 2003, the respondent State Bar of California through its
office of Office of Trial Counsel, issued a nine-count Notice of Disciplinary Charges
("NDC") A copy of the NDC is attached hereto as Exhibit B and made a part hereof

hereof, pages 20 to 25 on Petitioner's Exhibits in Support of Petition for Writ of Review, Vol. 1.

5.    Petitioner filed in answer to the NDC and therein stated his denials and defenses to the charges. A copy of the petitioner's Answer is unavailable to him at present. He requests that he be permitted to supplement the record when it is obtained.

6.    Prior to commencement of trial on the captioned matter by the State Bar Trial Court Petitioner filed a number of motions and requests review of his pretrial motions made to the State Bar Trial Court, including:

A. Petitioner's Motion to Enforce the Settlement Agreement, proffered by the State Bar's Office of Trial Counsel and accepted by the Petitioner, which was denied by the Trial Court;

B. Petitioner's Motion to Strike All Charges on the grounds the funds in question were held for a third party medical care provider beneficiary and the petitioner was not permitted to give them to the complaining client, which was denied;

C. Petitioner's Motion to Dismiss All Charges on the grounds of Latches in that the alleged misconduct occurred some four years before the commencement of the State Bar's investigation, memories had faded, and evidence lost, and specifically, the State Bar investigation focused only on the petitioner's State Bar's IOLTA program trust account, subpoenas for which were served; the State Bar was completely unconcerned with the petitioner's non-IOLTA trust handling, never questioned it and, thereby, misleading the member into not subpoenaing these bank records to preserve them in the event misconduct

is alleged concerning them; the bank had merged into another and records of the bank were unavailable; this motion was denied;

      D. Petitioner's Motion to Dismiss under the anti-SLAPP statute, which was denied, and for which an immediate appeal was filed;

      E. Petitioner's Motion in Limine barring respondent State Bar's Office of Trial Counsel from introducing evidence and to Dismiss the charges, on the grounds that the evidence presented could not show culpability of any misconduct by the Petitioner, on the grounds the allegedly harmed client was never entitled to the funds paid by the property insurer, they being third party med-pay funds payable only to medical care providers for treatment for injuries proven to be caused on the insured property; this motion  was denied.

      F. Request for a Trial by Jury of the petitioner's peers, on the grounds that the issued had not been revisited in light of recent reviews of California Constitutionality of the issue, which was denied.

The petitioner is in the process of obtaining copies of all documents pertaining to the above and requests that he be permitted to supplement the record when they are obtained.

      7.    At a trial of the charges, which commenced on January 25, 2005, and continued until January 27, 2005, the petitioner fully participated in representing himself in propia persona, and presented witnesses and other evidence of his innocence of the charges. Following submission by evidence by State Bar through it Office of Trial Counsel the petitioner moved the trial court for an order of judgment of dismissal of the charges or verdict in Petitioner's favor on several grounds, including the following:

A. The State Bar Office of Trial Counsel failed to carry its burden of proof of misappropriation by the presumption the were because the funds in the petitioner's State Bar's IOLTA program trust account fell below the amount held in trust, and conversely, the petitioner's conduct conformed with the U.S. Supreme Court instruction in <u>Brown v. Legal Foundation of Washington</u>, 123 S.Ct. 1406, 155 L.Ed.2d 376 as they were medical care provider's funds; they were not, and never would be, the client's;

B. At no time was the petitioner authorized to turn over to the complaining client the funds held in trust as they were paid by the property insurer to be held in trust for a third party beneficiary, one or more medical care provider proven to have provided treatment related to injuries occurring on the insured property;

C. A third party claimant to be a beneficiary of the funds, San Francisco General Hospital, through Office of the Tax Collector of the City & County of San Francisco, as a medical care provider, that had previously asserted its lien, was promptly notified and agreed the funds held in trust should be continued to be held in trust pending a determination of how much it was owed and agreed that they should be held in a trust instrument other than the State Bar's IOLTA program trust fund;

D. No evidence was presented that the petitioner misappropriated the funds at any time;

F. The trust funds were paid to new attorney for the client as soon as the petitioner learned who the new attorney for the client was.

5

This motion was denied in it's entirely. A copy of the transcript of the hearing is attached hereto as Exhibit C, and made a part hereof, pages 26 to 505 of Petitioner's Exhibits in Support of Petition for Writ of Review, Vols. 1 and 2.

8.      On April 20, 2005, the State Bar Trial Court, Judge Patrice McElroy presiding, filed its Decision, finding the petitioner culpable of the four counts charged by the Office of Trial Counsel: (1.) failing to notify client of receipt of client funds; (2) failing to maintain client funds in a trust account; (3) misappropriating client fund for his own use and benefit; (4) failing to pay client funds promptly.  A copy said Decision is attached as Exhibit D and made a part hereof, pages 506 to 522 of Petitioner's Exhibits in Support of Petition for Writ of Review, Vol. 2.

9.      On May 5, 2005, the petitioner filed a motion for reconsideration of the Decision of the State Bar Trial Court filed on April 20, 2005. On May 20, 2005 the State Bar Office of Trial Counsel filed opposition thereto. On May 25, 2005 the petitioner filed a reply brief. On May 27, 2005 the State Bar Trial Court, Patrice McElroy, State Bar Judge denied the motion on the grounds that "there is an insufficient showing or errors of law or fact." A copy of that Order is attached as Exhibit F and made a part hereof, page 520 of Petitioner's Exhibits in Support of Petition for Writ of Review, Vol. 2.

10.      On or about June 20, 2005, the petitioner filed a Request for Review by the Review Department of the State Bar Court. The State Bar Court Review Department ordered oral hearings on or about October, 2006 at which time the petitioner was due to be out of the country accompanying his wife on her long pre-planned teacher's sabbatical. Petitioner requested postponement of oral arguments which was denied. The

petitioner does not know if oral arguments were made before the Review Department of the State Bar Court.

11.    On February 23, 2007 the Review Department of the State Bar Court filed its Opinion on Review finding, among other things that "the mere fact that his (State Bar IOLTA trust fund account) balance repeatedly fell below the amount (the petitioner) was required to maintain in trust on supports a finding of willful misappropriation" and recommending the petitioner be suspended for three years, stayed, with two years actual suspension, and three years probation, with conditions. A copy of the Opinion on Review of the Review Department of the State Bar Court is attached as Exhibit E, and made a part hereof, pages 523 to 549 of Petitioner's Exhibits in Support of Petition for Writ of Review, Vol.2.

12.    On March 8, 2007 the petitioner filed a Request for Reconsideration by the Review Department of its Opinion filed February 23, 2007.

13.    On March 9, the State Bar Office of Trial Counsel served its Opposition to Request for Reconsideration.

14. On March 12, 2007 the petitioner served his Reply to Opposition to Request for Reconsideration by Review Department.

15.    On Mach 29, 2007 the Review Department of the State Bar Court filed is Order denying the petitioner's Request for Reconsideration. A copy of the Order Denying Petitioners Request for Reconsideration is attached as Exhibit G, and made a part hereof pages 551 to 552 of Petitioner's Exhibits in Support of Petition for Writ of Review.

16. Pursuant to California Rules of Court, Rule 954, good grounds exist for review of the State Bar Court and State Bar Court Review Department decisions, opinions, recommendations, orders and rulings in this matter in Supreme Court in that:

(A) Review is necessary to settle important questions of law:

(1.) <u>Non-Client Funds held in Trust</u>: Third party liens bedevil the Petitioner in his practice constantly. Third party funds held in trust are problematic. He respectfully believes the State Bar got it wrong in finding, among other things, that petitioner had to turn over unpaid third-party med-pay trust funds to a client. The Petitioner prays the Supreme Court provide a guide to the perplexed concerning third party liens and third party funds held in trust:

(a.) Neither California law nor State Bar guidelines provide instruction on compliance with the United States Supreme Court decision in Brown v. Legal Foundation of Washington, 123 S.Ct. 1406, 155 L.Ed.2d 376 and, specifically, when must trust funds be removed from the State Bar's IOLTA program trust account and placed in one earning interest for the trust fund beneficiary.

(b.) The State Bar precedent that an attorney is presumed to misappropriate funds solely by a showing that the amount in his State Bar IOLTA trust account fell below funds held in trust is contrary to the law in <u>Brown v. Legal Foundation of Washington</u>, 123 S.Ct. 1406, 155 L.Ed.2d 376 and indeed contrary to it.

(2.) <u>Third Party Liens</u>. The Petitioner respectfully posits that a client does not have standing to assert a claim of misappropriation or breach of fiduciary duty

8

to a third party lien claimant and trust fund beneficiary when, as here, the third

party lien claimant and trust fund beneficiary is aware and approved of the

handling of the trust funds and does not claim entrusted funds were mishandled.

  (3.) <u>Jury</u>. Petitioner respectfully prays the Supreme Court review its

previous denial of an accused member's right to a jury of his peers in that the

cases cited seem inapposite to current law and the California Constitution.

(B) The State Bar Court has acted without or in excess of jurisdiction;

  (1.) <u>Anti- SLAPP motion.</u> The Petitioner sought immediate review upon

the State Bar Court's denial of his anti-SLAPP motion and, pending review, the

State Bar Court had no jurisdiction and should have abated the proceedings

pending review.

  (2.) <u>Stipulated Discipline.</u> The member stipulated to charges and a private

reproval. The matter should have ended there.

  (3) <u>Uncharged Misconduct</u>. Discipline was recommended/ordered by the

State Bar Court and Review Department for uncharged alleged misconduct.

(C.) Petitioner did not receive a fair hearing;

  (1.) <u>Credibility Finding</u>. The State Bar Court found the petitioner not

credible, disregarding his testimony entirely, without a reasonable basis or

rational cause.

(D.) The decision is not supported by the weight of the evidence;

(E.) The recommended discipline is not appropriate in light of the record as a

whole in that:

9

(1) <u>Private Reproval Agreement</u>. The member stipulated to a private reproval for failure to keep adequate financial records. He was penalized for his defense to the continued proceeding.

(2) <u>Improper Bases for Findings</u>. The State Bar Trial Court and the State Bar Trail Court Review Department improperly relied on irrelevant matter and unsubstantiated facts, innuendo, unsupported conclusions and accusations to find the respondent member culpable for misconduct;

(3.) <u>Non-Sufficiency of Evidence</u>. Neither the State Bar Trial Court nor the State Bar Court Review Department set forth facts in their respective opinions sufficient to show that the member is culpable of any misconduct by clear and convincing evidence.

WHEREFORE, the petitioner respectfully requests that this Court issue its writ of review and that the decision of respondent State Bar Court judge and State Bar Court Review Department be reversed and the Petitioner be exonerated of any wrongdoing.

Dated:

Francis T. Fahy,
Petitioner in Pro. Per.

PROOF OF SERVICE

I, _F-TAHY_ , declare:

I am employed in the County of San Francisco, California.  I am over the age of eighteen years and not a party to the within action; my home address is located in San Francisco, California 94102

On April _27_, 2007 , I enclosed and sealed true and correct copies of

PETITION TO THE SUPREME COURT FOR WRIT OF REVIEW OF STATE BAR
PROCEEDING NO. 01-O-02011-PEM
EXHIBITS IN SUPPORT PETITION FOR WRIT OF REVIEW TO THE SUPREME COURT
OF STATE BAR PROCEEDING NO. 01-O-02011-PEM

In envelopes addressed as follows and hand-delivered same to the following:

Pat McElroy, Judge ~~(1 COPY)~~
Clerk of the Court ~~(6 COPIES)~~  } 4 copies
State Bar Court – Review Department ~~(3 copies)~~
180 Howard Street
San Francisco, CA  94105

Donald Steedman, Deputy ~~(TWO~~ 1 COP~~IE~~S)
Office of the Chief Trial Counsel
The State Bar of California
180 Howard Street
San Francisco, CA  94105-1639

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this April 27, 2007, in San Francisco, California.

**EXHIBIT D**

S.B.C. No. 01-O-02011-PEM
S151939

SUPREME COURT
**FILED**

# IN THE SUPREME COURT OF CALIFORNIA
### En Banc

JUN 2 0 2007

Frederick K. Ohlrich Cl

Deputy

In re FRANCIS THOMAS FAHY on Discipline

The petition for writ of review is denied.

It is ordered that **Francis T. Fahy, State Bar No. 147721,** be suspended from the practice of law for three years, that execution of this suspension be stayed, and that he be placed on probation for three years on condition that he be actually suspended for 24 months and until he has shown proof satisfactory to the State Bar Court of respondent's rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4 (c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct. Respondent is further ordered to comply with the other conditions of probation recommended by the Review Department of the State Bar Court in its Opinion filed on February 23, 2007. It is also ordered that respondent take and pass the Multistate Professional Responsibility Examination during the period of his actual suspension. (See *Segretti v. State Bar* (1976) 15 Cal.3d 878, 891, fn.8.) Respondent is further ordered to comply with rule 9.20 of the California Rules of Court and perform the acts specified in paragraphs (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. (See Bus. & Prof. Code, § 6126, subd. (c).) Costs are awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

**GEORGE**

Chief Justice

I, Frederick K. Ohlrich, Clerk of the Supreme Court of the State of California, do hereby certify that the preceding is a true copy of an order of this Court as shown by the records of my office.

Witness my hand and the seal of the Court this

20 day of _____ 20 07

Clerk

By: _____
Deputy

The State Bar Court
Case no. 05-O-05123-LMA
S.B. Exhibit  1
☒ Identified    ☒ Admitted
☐ Denied ☐ Jud. Notice ☐ Withdrawn

**EXHIBIT**
_1_

kwiktag ®    031 975 683



0001

**EXHIBIT E**

No. _____

_____

IN THE

SUPREME COURT OF THE UNITED STATES

_____

Francis Thomas Fahy, PETITIONER, PRO SE

vs.

Ronald M. George, et al.,  RESPONDENTS

On Petition for a Writ of Certiorari to

The Supreme Court of California

PETITION FOR A WRIT OF CERTIORARI

Francis Thomas Fahy
Petitioner, Pro Se
259 Oak Street
San Francisco, CA  94102
(415) 863-1418

## QUESTIONS PRESENTED

1. In light of the holding of this Court in <u>Brown v. Legal Foundation of Washington,</u> 123 S.Ct. 1406, 538 U.S. 216, 155 L.Ed.2d 376 (U.S. 03/26/2003) may the respondents impose a presumption of clear and convincing evidence that an attorney willfully misappropriated trust funds because he held them in a non-IOLTA[1] trust, and require the attorney to show by clear and convincing evidence that he or she did not misappropriate the funds held in trust?

2. May the respondents discipline an attorney member who, for religious reasons, refuses to "atone" following a finding of misconduct?

3. May the respondents discipline the petitioner for his criticism of the administration of the attorney discipline system in California?

4. May the respondents summarily discipline the petitioner for uncharged otherwise legal speech?

---

[1] "Interest On Lawyer's Trust Account"

LIST OF PARTIES

Francis Thomas Fahy,
259 Oak Street
San Francisco, CA  94102
(415) 863-1418

PETITIONER

**All parties do not appear in the caption on the cover page. A list of all parties to the**

**proceeding in the court whose judges are the subject of this petition are as follows:**

Justices of Supreme Court of California

Chief Justice Ronald M. George

Associate Justice Carlos R. Moreno

Associate Justice Joyce L. Kennard

Associate Justice Kathryn Mickle Werdegar,

Associate Justice Ming W. Chin

Associate Justice Marvin R. Baxter

Associate Justice Carol A. Corrigan.

Supreme Court of California
455 Golden Gate Avenue
San Francisco, CA  94102
(415) 415-865-7000

State Bar of California

Sheldon Sloan, President, State Bar

Review Department Judges

Epstein, J.

Watai, J

3

Stovitz, J.

State Bar Court Judge

Pat McElroy,

State Bar Office of Trial Counsel

Donald R. Steedman

Tammy Albertson-Murray

State Bar of California
180 Howard Street
San Francisco, CA 94107
(415)

RESPONDENTS

# TABLE OF CONTENTS

QUESTIONS PRESENTED                                          2

PARTIES TO THE PROCEEDINGS                                  3

TABLE OF CONTENTS                                           5

TABLE OF AUTHORITIES                                        6

STATEMENT OF JURISDICTION                                   7

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED            7

STATEMENT OF THE CASE                                       8

REASONS FOR GRANTING THIS PETITION                          9

CONCLUSION                                                 10

Appendix A.   State Bar Review Court Decision              12

## TABLE OF AUTHORITIES

CASES

Brown v. Legal Foundation of Washington, 123 S.Ct. 1406, 538 U.S. 216, 155 L.Ed.2d 376 (U.S. 03/26/2003)

Giorvanazzi v. State Bar (1980) 28 Cal.3rd 465, 474

STATUTES AND RULES

U. S. Code, Title 42, Section 1981.

U. S. Code, Title 15, Section 1.

## STATEMENT OF JURISDICTION

The jurisdiction of this Court is invoked under 28 U.S.C. 1257(a):

The June 20, 2007 the Supreme Court of California denied review of petitioner's petition for review of the State Bar's discipline recommendation and ordered discipline imposed, as stated in Appendix A; this order by the respondent Supreme Court becomes effective on July 20, 2007.

## CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

United State Constitution, First, Fourth, Fifth and Fourteenth Amendments. U. S. Code, ; Title 42, Section 1981; U. S. Code, Title 15, Section 1

STATEMENT OF THE CASE

The petitioner is an attorney admitted to practice in the State of California by the respondents Supreme Court and subject to discipline administered by respondents' State Bar respondents. This matter arises from a disciplinary action taken against the petitioner for refusing to maintain trust funds in the respondents IOLTA scheme.

The respondents allege the petitioner mishandled the trust funds and offered him a stipulation of a private reproval. The petitioner agreed to plead culpable to failing to maintain complete financial records but criticized the respondents for extorting funds from California Bar members with its presumption of willful misconduct when members placed funds in non-IOLTA accounts earning interest for trust beneficiaries instead of the State Bar's IOLTA scheme. Refusing to honor the stipulated discipline agreement, the respondents charged the member with misconduct, as stated in Appendix A.

Following a trial, the respondents ordered the petitioner suspended from practicing law for three years, eighteen months actual suspension. The petitioner petitioned for review to respondents' State Bar Court Review Department.

The respondents' finding of culpability was despite the uncontroverted facts that the allegedly wronged client neither had the right to the funds in question nor standing to assert any claim of against the petitioner; the funds in question were held for third parties not part of the proceedings in the State Bar Court; the beneficiaries were medical care providers with outstanding invoices for medical care provided the client. Indeed, the respondents' found the client still owed him some money.

8

The petitioner sought review and a rehearing. Following review the respondent's discipline increased by six months to two years actual suspension; citing Giorvanazzi v. State Bar (1980) 28 Cal.3rd 465, 474 the respondents held the petitioner willfully misappropriated trust funds for not keeping them in their IOLTA account, as set forth in their Bar Review Court Decision, Appendix A. Discipline was also imposed because the petitioner stated he would not atone for alleged wrongdoing as he believed that required him to become a Jew, which he declined to do.

Petitioner's request for rehearing was denied.

The Petitioner sought a Writ of Review to the Supreme Court of California. On June 20, 2007 the respondents denied Review and ordered the respondents' State Bar's recommendations, to become effective July 20, 2007.

## REASONS FOR GRANTING THIS PETITION

The respondents IOLTA scheme presumption forces California attorneys to violate their contractual legal and ethical duties to their clients and impairs their right to contract: U. S. Code, Title 42, Section 1981 states, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to [...] the full and equal benefit of all laws [...].", at (c) such right, "[is] protected against impairment by nongovernmental discrimination and impairment under color of State law.""

U. S. Code, Title 15, Section 1. "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

The IOLTA scheme as administered in California violates the Constitution in failing to follow the plan instructed it by the U.S. Supreme Court in Brown v. Legal

9

<u>Foundation of Washington,</u> 123 S.Ct. 1406, 538 U.S. 216, 155 L.Ed.2d 376 (U.S.

03/26/2003) As foretold by Justice Kennedy in his dissent, "The First Amendment

consequences of the State's action have not been addressed in this case, but the potential

for a serious violation is there. See <u>Abood v. Detroit Bd. of Ed.</u>, 431 U. S. 209 (1977);

<u>Keller v. State Bar of Cal.</u>, 496 U. S. 1 (1990). Today's holding, then, is doubly

unfortunate. One constitutional violation (the taking of property) likely will lead to

another (compelled speech). These matters may have to come before the Court in due

course"

Here, the member was penalized for following the instructions of the U.S.

Supreme Court and severely so for complaining about it. He was disciplined for refusing

to follow another religion as part of his disciplinary remedial plan. The petitioner will be

permanently barred from being reinstated as an attorney unless this petition is granted as

he, and similarly situated non-Jews will continue to suffer from the respondents'

oppression.

The petitioner does not seek an appeal or review of the respondents' conduct; he

seeks an order that respondents cease imposing the presumption as stated above, from

penalizing and imposing discipline on the petitioner, and those similarly situated, for

speech-related conduct, such as complaining that the respondent's proceedings resemble

a kangaroo court, etc. The petitioner seeks that the respondents be prevented from

retaliating against those opposing the frankly extortionist scheme to fund their IOTLA

program. The petitioner also seeks an order from the Supreme Court that the respondents

conduct an audit of every IOLTA account maintained by its members as no member of

10

the California State Bar is penalized for keeping too much money in their IOLTA account.

## CONCLUSION

For the foregoing reasons this petition for a writ of certiorari is respectfully requested to be granted.

Respectfully submitted this July ___, 2007

Francis Thomas Fahy
Petitioner in Pro. Se.
259 Oak Street
San Francisco, CA 94102
(415_863-1418

11

PUBLIC MATTER – NOT DESIGNATED FOR PUBLICATION

**FILED**

FEB 23 2007

STATE BAR COURT
CLERK'S OFFICE
LOS ANGELES

## REVIEW DEPARTMENT OF THE STATE BAR COURT

In the Matter of

FRANCIS T. FAHY,

Member of the State Bar.

)
)
)
)
)
)

01-O-02011

**OPINION ON REVIEW**

### I. INTRODUCTION

Respondent, Francis T. Fahy, requests review of the decision of a hearing judge finding culpability for his failure to notify a client of receipt of funds, failure to maintain client funds in trust, misappropriation involving moral turpitude, and failure to promptly pay client funds. The hearing judge recommended that respondent be actually suspended from the practice of law for eighteen months. Respondent disclaims culpability on all counts; the State Bar urges that respondent should be disbarred.

We have independently reviewed the record (Cal. Rules of Court, rule 9.12; Rules Proc. of State Bar, rule 305(a); *In re Morse* (1995) 11 Cal.4th 184, 207) and find clear and convincing evidence to support the hearing judge's findings of culpability, although we modify her aggravation and mitigation determinations as discussed *post*. We do not adopt the recommended discipline of 18 months' actual suspension but instead recommend two years' actual suspension, with the added condition that respondent shall remain on actual suspension until he establishes his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct.[1]

---

[1] Unless noted otherwise, all further references to "standard(s)" are to this source.

kwiktag®    022 607 320

*Appendix A*

## II. DISCUSSION

### A.    Factual and Procedural Background

Respondent was admitted to the practice of law on July 31, 1990, and has no prior record of discipline. In June 1999, Barbara Neal employed respondent to represent her in a personal injury action arising out of a slip-and-fall accident that occurred in October 1998 while she was at a movie theater owned by Dolby Labs, Inc. Neal executed a retainer agreement providing for attorneys fees of 33 1/3 percent of any amount recovered without a lawsuit and 40 percent of any recovery after a lawsuit was initiated. The retainer agreement authorized respondent to endorse her signature to all settlement checks "provided that [respondent] immediately distributes to client the client's share of the recovery." Thereafter, respondent negotiated with Dolby Labs' insurer, Kemper Insurance Company (Kemper) in an attempt to settle Neal's personal injury claim. Although Kemper denied liability of its insured, it sent respondent a check for medical costs in the amount of $5,000, dated September 30, 1999. Respondent endorsed Neal's signature on the check, and on October 4, 1999, he deposited it into his client trust account maintained at the Bank of America (CTA) without informing Neal he had received the funds.[2]

Respondent filed a complaint on Neal's behalf in the San Francisco County Superior court on October 13, 1999, but then advised her by letter dated November 20, 1999 (Withdrawal Letter) that he would no longer be able to represent her due to his concerns about the City and County of San Francisco's lien recovery ordinance.[3] He did not mention the insurance payment

---

[2]Respondent testified that he told Neal that he had received the $5,000 check, although he did not recall the circumstances of the conversation. The hearing judge did not believe respondent's testimony about the putative conversation.

[3]In this letter, respondent wrote "I recently received a copy of the City and County of San Francisco's lien ordinance. A copy of it is enclosed. It is so draconian that I am afraid to continue to represent you in the referenced matter. I am afraid that due to a clerical error or oversight, I could not only lose my livelihood, and my bar card, but also be subject to conviction for a crime of moral turpitude and receive a prison sentence. I am not willing to take such a risk. Therefore, this office and I are no longer able to represent you in the refence [sic] matter."

-2-

in that letter. Respondent further testified that he sent a second letter on November 20, 1999, the same day that he sent the Withdrawal Letter, advising Neal of the receipt of the $5,000. Neal testified she never received the second letter. The hearing judge found her testimony to be credible and disbelieved respondent's testimony about the second letter.

Between March and May 2000, the balance in respondent's CTA fell below $3,333.33 on several occasions and in May 2000 it dropped as low as 616.72.[4] By May 2000, respondent was formally substituted out of Neal's case, and thereafter he arranged for Neal to pick up her file in June 2000 when she retained new counsel, Shelley Buchanan. Even after he withdrew from Neal's case, respondent never informed Neal or Buchanan about the insurance proceeds. Neal testified that she first learned about the $5,000 during her deposition in November 2000.[5] The hearing judge found this testimony to be credible. After Buchanan demanded reimbursement of the insurance proceeds on November 20, 2000, respondent sent her a check for $5,000 on November 27, 2000, but advised her to retain the funds in trust since respondent had a claim for his fee and costs.

---

[4]According to the retainer agreement, respondent would receive as payment for his services one-third of the amount recovered if settled without suit, or 40 percent of the amount recovered after suit was instituted. Thus, respondent may have been entitled to $1,666.67 in fees since no lawsuit had been filed when he settled with Kemper. Respondent was required to maintain at least $3,333.33 on Neal's behalf, but the balance in his CTA dipped to $2,343.41 on March 23, 2000; $843.41 on March 27, 2000; $2,343.41 on April 6, 2000; $2,488.72 on April 27, 2000; $1,896.72 on May 17, 2000; and $616.72 on May 30, 2000. The hearing judge found that the account balance fell below the required minimum on additional occasions (e.g., $2,283.38 on July 13, 2000; $2,961.97 on November 14, 2000; and $2,703.97 on November 15, 2000), but these findings are not supported by the record because the bank statements from June to November 2000 were not admitted.

[5]According to the record, Neal and Buchanan participated in a settlement conference on an undisclosed date in November 2000 where, according to Buchanan, "some sort of off-handed remark about some payment" was made. Apparently, Buchanan did not follow up on the comment and it was not until Neal's deposition occurred approximately one week later that the attorney for the defendant revealed that a medical payment check had already been issued.

On December 16, 2003, the State Bar filed a four-count Notice of Disciplinary Charges (NDC) alleging that respondent failed to notify Neal of his receipt of the insurance proceeds (Rules Prof. Conduct, rule 4-100(B)(1)),[6] failed to maintain client funds in trust (rule 4-100(A)), committed an act involving moral turpitude by misappropriating Neal's funds (Bus. & Prof. Code, § 6106),[7] and failed to promptly pay Neal's funds (rule 4-100(B)(4)).  After a three-day trial[8] commencing on January 25, 2005, the hearing judge found respondent culpable on all four charged counts.  The hearing judge also found the following aggravating circumstances: multiple acts of wrongdoing (std. 1.2(b)(ii)); indifference toward rectification or atonement for his misconduct (std. 1.2(b)(v)); conduct surrounded by concealment and dishonesty (std. 1.2(b)(iii)); uncharged misconduct due to the failure to communicate with Neal and the attempt to mislead Buchanan (std. 1.2(b)(iii)); and disrespect to the court resulting in harm to the administration of justice (std. 1.2(b)(iv)).[9]

---

[6]Unless noted otherwise, all further references to "rule(s)" are to the Rules of Professional Conduct.

[7]Unless noted otherwise, all further references to "section(s)" are to the Business and Professions Code.

[8]Prior to trial, respondent filed innumerable pleadings, including a Demand for a Jury Trial, three Motions to Dismiss, a Motion to Strike and a Motion to Enforce a Settlement Agreement.  The hearing judge denied each of these matters.  Respondent does not here contest these rulings and we do not address them further.

[9]Throughout these proceedings, in letters to the court and approximately fifteen filed pleadings, respondent made a series of false and demeaning remarks about the State Bar, its prosecutor in this case, the State Bar Court, and the hearing judge, commencing with his answer to the NDC and continuing until he exhausted his post-trial motions.  Such epithets include, but are not limited to, repeated descriptions of the State Bar and its prosecutors as "frauds, liars and thugs," "hillbilly scum," "criminals," "gangsters," and "incompetent and malignant bunch of yokels."
Respondent also referred to the Hearing Department as a "kangaroo court" that not only "tolerates corruption and perjury" but also employs "jack-booted thugs" who use "nazi tactics." He described the hearing judge as a "willfully corrupt," "prolific liar" who "falsifies the evidence," suffers from "perversion and vile racism" and "needs her head examined." He also claimed the hearing judge "intentionally, fraudulently and maliciously suppressed . . . evidence

The hearing judge found the following factors in mitigation: the absence of a prior record of discipline over nine years of practice (std. 1.2(e)(i)); extreme emotional difficulties due to a "troublesome family situation" (std. 1.2(e)(iv)); pro bono activities; and respondent's repayment of the insurance funds prior to the filing of an NDC (std. 1.2(e)(vii)). The hearing judge did not find an extraordinary demonstration of good character (std. 1.2(e)(vi)), since respondent's two character witnesses were either untrustworthy or unaware of the extent of respondent's misconduct, and collectively, they did not represent a wide range of references in the legal and general communities. Due to the absence of demonstrated prejudice, the hearing judge also declined to find mitigation for the State Bar's delay in conducting the disciplinary proceedings.

The hearing judge recommended that respondent be suspended for three years and until he proves compliance with standard 1.4(c)(ii), stayed, and that he be placed on five years' probation on the condition that he be actually suspended for 18 months.

**B.    Failing to Notify Neal of the Insurance Proceeds (Rule 4-100(B)(1))**

We find meritless respondent's contention that the evidence does not support a finding that he failed to notify Neal of his receipt of the Kemper insurance check. Although respondent testified that he told Neal about the Kemper insurance check within one week of receiving it, he could not recall how he informed her. Respondent's wife, who worked as his legal assistant, also testified that she attended meetings with Neal at respondent's office where respondent not only told Neal about the Kemper check but also that it would have to be retained in trust pending

---

last in . . . her possession" and should be disbarred. Simply because the hearing judge, State Bar prosecutor, and complaining witness are African American, respondent expected the hearing judge to remove herself from the case due to bias. He also threatened to sue the hearing judge but offered to "drop his claims to be filed in the U.S. District Court" in exchange for a dismissal of all charges.

During trial, respondent threw documents on the floor in court instead of handing them to the prosecutor. In a post-trial motion, he referred to the Supreme Court Chief Justice as a racketeering boss, and in another pleading, respondent threatened to file a lawsuit "against Chief Justice George as Chief administrator of the State Bar and his minions and henchmen for the [sic] their scheme to extort California attorneys, theft of the public's money and fraud against the citizens of the State of California and the United States of America."

resolution of the outstanding lien asserted by the City and County of San Francisco. Respondent's wife could neither recall when these meetings took place nor how many occurred. She further admitted that her memory of these events had faded due to the passage of time. Respondent also relied on a letter he purportedly sent to Neal on November 20, 1999, the same date he sent his Withdrawal Letter to her. In this second letter, respondent advised Neal of the $5,000 insurance check, which he said he planned to hold in trust for medical lien holders pending further negotiation with the City and County of San Francisco.[10] Respondent testified that he sent both letters on the same date by United States registered mail, return receipt requested.

Neal testified that respondent never informed her of his receipt of the Kemper insurance proceeds either orally or in writing, that she met with respondent only once when she retained him, and that the only correspondence she received from him was the Withdrawal Letter. Neal's attorney, Buchanan, testified that she personally picked up Neal's file from respondent and, after careful review, she did not find a copy of the second letter or any other references to the $5,000. Furthermore, Buchanan testified that respondent never mentioned to her that he had received the Kemper check in any of their correspondence or conversations. According to Neal and Buchanan, the first that either of them learned of the Kemper check was during Neal's deposition in November 2000, more than a year after respondent received the funds.

As noted *ante*, the hearing judge did not deem credible the testimony of respondent or his wife and resolved the conflicting evidence regarding the issue of notice of the $5,000 in favor of Neal. We give great deference to the judge's credibility finding and we adopt it. "The hearing [judge] is best suited to resolving credibility questions, because [he or she] alone is able to

---

[10]This second letter stated: "This will confirm that that [sic] you told me you were busy and asked me to sign [the check] for you. I did so and deposited the $5,000 in my attorney-client trust account. ¶ This will also serve to confirm . . . that I am unable to release any of the anticipated med pay funds directly to you but must hold them for medical care lien holders . . . . ¶ . . . As I also explained to you . . . I said I would make an effort to persuade the City & County to allow part of the med pay to be paid to medical care providers other than them."

maintain in trust on Neal's behalf supports a finding of wilful misappropriation. (*Giovanazzi v. State Bar* (1980) 28 Cal.3d 465, 474). Although not every misappropriation that is wilful necessarily involves moral turpitude (*Lawhorn v. State Bar* (1987) 43 Cal.3d 1357, 1367), here the various acts of concealment of the $5,000 " 'used by [respondent] to further his position were dishonest and involved moral turpitude within the meaning of . . . section 6106 . . . .' " (*Coppock v. State Bar* (1988) 44 Cal.3d 665, 679.) Moreover, respondent's failure to produce financial records "supports an inference that he converted the proceeds to his own use. [Citation.]" (*Greenbaum v. State Bar* (1976) 15 Cal.3d 893, 900; see also *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 515, 516 [misappropriation of client funds for personal use constitutes moral turpitude].) We therefore find clear and convincing evidence that respondent's conduct in concealing the $5,000 from Neal for over one year, and in allowing his CTA account on several occasions to be depleted below the amount he was obligated to maintain on her behalf, demonstrates that respondent wilfully misappropriated the Kemper insurance proceeds, and that these actions involved moral turpitude within the meaning of section 6106. (*McKnight v. State Bar* (1991) 53 Cal.3d 1025, 1033-1034; *Grim v. State Bar* (1991) 53 Cal.3d 21, 30; *Bate v. State Bar* (1983) 34 Cal.3d 920, 923.)

### E.    Failing to Promptly Pay Client Funds (Rule 4-100(B)(4))

Since respondent did not disburse the medical payment to Neal until more than one year after he received the funds from Kemper, the hearing judge concluded that respondent failed to promptly pay client funds as requested. (Rule 4-100(B)(4).) Respondent argues that he promptly paid the funds within one week after Neal's successor counsel sent him a demand letter on November 20, 2000. Without doubt, a payment request is a required element for a rule 4-100(B)(4) violation.[14] (*Chefsky v. State Bar* (1984) 36 Cal.3d 116, 126-127; *In the Matter of*

---

[14]This rule provides that "A member shall: [¶] . . . [¶] (4) Promptly pay or deliver, *as requested by the client,* any funds, securities, or other properties in the possession of the member which the client is entitled to receive." (Emphasis added.)

Bar as the return address on the subpoena envelope because he did not want Buchanan to contact him after she received the subpoena.

However, we conclude that the record supports a finding of uncharged misconduct in aggravation not found by the hearing judge in that respondent did not provide an accounting to Neal after he withdrew from employment (rule 4-100(B)(3))[16] and because he threatened to report Buchanan to the State Bar if she did not pay him the attorney fee he believed he was owed (rule 5-100(A)).[17]  (See *Edwards v. State Bar* (1990) 52 Cal.3d 28, 36 [while evidence of uncharged misconduct may not be used as an independent ground of discipline, it may be considered in aggravation where the evidence is elicited for a relevant purpose and where the determination of uncharged misconduct is based on the attorney's own evidence].)

We adopt the hearing judge's finding in aggravation that respondent demonstrated indifference toward rectification of or atonement for the consequences of his misconduct. (Std. 1.2(b)(v).)  Throughout these proceedings, respondent expressed disdain for the disciplinary process, and post-trial, he mockingly described the attribute of atonement as ". . . a religious ritual Jews engage in . . ." and declared that he "refuses to convert to keep his Bar card."

Finally, we agree with the hearing judge's finding that respondent's repeated acts of disrespect towards the State Bar Court and the disciplinary process harmed the administration of justice.  (Std. 1.2(b)(iv).)  Respondent's invectives against the prosecutor, the hearing judge and the State Bar in his pleadings and correspondence, as described in footnote 9 *ante*, were not merely the offhand comments of a disgruntled attorney, but were, as respondent's counsel

---

[16]Rule 4-100(B)(3) requires a member to render appropriate accounts to the client regarding all funds of the client coming into possession of the member.

[17]Rule 5-100(A) prohibits a member from threatening "to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute."

-12-

properly characterized them, "unfortunate."[18] Given the nature and extent of respondent's

inappropriate conduct, we observe that the prosecutor and the hearing judge "performed

creditably under extremely trying circumstances." (*Lebbos v. State Bar* (1991) 53 Cal.3d at 37,

49.) Although he asserts there are mitigating circumstances that would explain his behavior

(which we address below), there is an acknowledgment in his brief that the claimed mitigation

"does not excuse his behavior."

### 2. Mitigation

We adopt all but one of the hearing judge's findings concerning mitigation and we also

find an additional mitigating circumstance. We afford no mitigation to respondent's emotional

difficulties and anger stemming from his "troublesome family situation." Respondent was

engaged in a protracted and heated child custody battle which resulted in an arrest and criminal

charges against him. Respondent testified at length in the hearing below about his perception

that he was persecuted by the judiciary and law enforcement in Marin County.[19]   Nevertheless,

as the State Bar correctly points out, there is no clear and convincing evidence that respondent's

emotional difficulties caused him to commit the alleged misconduct.[20] Further, respondent

---

[18]Respondent's counsel also described respondent's disrespectful harangues as "unique" but unfortunately this is not necessarily true. (See e.g., *Lebbos v. State Bar* (1991) 53 Cal.3d 37, 42, fn. 5.)

[19]Respondent characterized the family law department of the Superior Court of Marin County as a racketeer-influenced, criminal organization and admitted that he was suing practically all the judges in that county. He also claimed that law enforcement in Marin County harassed him, intimidated him and treated him like a criminal. According to respondent, the "[j]udges conspired with the sheriffs there, and the district attorney charged me solely in retaliation for my complaining about the conduct there." For multiple days during trial in his disciplinary matter, respondent displayed behind his chair in court a blown-up picture of someone respondent described as a deputy in Marin County who used a dog to prevent him from going into court by driving him out of the courtroom into an elevator.

[20]With respect to his battle with his ex-wife over custody of the children and how it affected his conduct in the Neal matter, respondent testified ". . . I don't think it affected my

presented no evidence, expert or otherwise, that he no longer suffers from his emotional problems. (Std. 1.2(e)(iv).)

We agree with the hearing judge that respondent's payment of $5,000 prior to the filing of a State Bar complaint in January 2001 is entitled to significant consideration as a mitigating factor. (*Lawhorn v. State Bar, supra,* 43 Cal.3d at p. 1366.)

Respondent testified that he performed "a couple hundred hours" of pro bono work related to family law in 1997 and represented four clients pro bono in 1999. Although respondent's sporadic pro bono work deserves consideration as a mitigating factor (see *In the Matter of Bach* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 631, 647-648), on this record, we find it neither compelling nor worthy of significant weight. (See, e.g., *Gadda v. State Bar* (1990) 50 Cal.3d 344, 356 [attorney's four years of pro bono work resulting in several letters and certificates of commendation demonstrated a zeal in pro bono work deserving of mitigating weight].)

The hearing judge did not acknowledge as mitigation respondent's cooperation with the State Bar by entering into a factual stipulation covering background facts in the matter after trial commenced. Although the stipulated facts were not difficult to prove and did not admit culpability, they were, nevertheless, relevant and assisted the State Bar's prosecution of the case. Thus, we give respondent's factual stipulation modest mitigative weight under standard 1.2(e)(v). (See *In the Matter of Kaplan* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 547, 567 [attorney afforded mitigation for entering belated stipulations which mostly concerned easily provable facts].)

---

ability to practice or anything, other than that I had to take time out to find out what was going on with the children . . . ."

-14-

**B.    Level of Discipline**

The hearing judge recommended that respondent be actually suspended from the practice of law for eighteen months.  Respondent seeks dismissal of all charges and therefore no imposition of discipline.[21]  The State Bar maintains that "the presumptive level of discipline for misappropriation is disbarment," citing standard 2.2(a) as the basis for its contention.[22]  We also consider standard 2.3,[23] although we agree with the State Bar that standard 2.2(a) is the most appropriate because it  proposes the most severe of the sanctions.  (Std. 1.6(a).)

In determining the appropriate level of discipline, we afford great weight to the standards (*In re Silverton* (2005) 36 Cal.4th 81, 92), but we do not believe standard 2.2(a) establishes a presumption in favor of disbarment as asserted by the State Bar.  In fact, the standards are considered by the Supreme Court as "simply guidelines." (*Greenbaum v. State Bar* (1987) 43 Cal.3d 543, 550; *Howard v. State Bar* (1990) 51 Cal.3d 215, 221-222.)  Indeed, in many misappropriation cases that post-date the implementation of the standards, the court has imposed discipline less severe than disbarment.  (E.g., *Boehme v. State Bar* (1988) 47 Cal.3d 448, 451-452, 454.)

---

[21]In his Notice of Errata, respondent asserts that "if culpability is found, the level of discipline should be less than 18 months actual suspension with appropriate conditions of probation."

[22]Standard 2.2(a) provides for disbarment unless "the amount of the funds or property misappropriated is insignificantly small or if the most compelling mitigating circumstances clearly predominate . . . .  In those latter cases, the discipline shall not be less than a one-year actual suspension, irrespective of mitigating circumstances."

[23]Standard 2.3 provides:  "Culpability of a member of an act of moral turpitude . . . or of concealment of a material fact to a court, client or another person shall result in actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the member's acts within the practice of law."

-15-

We look to prior discipline decisions for additional guidance, giving consideration to those misappropriation cases based on similar facts. The Supreme Court has stated that the "'usual'" discipline for willful misappropriation is disbarment (*Edwards v. State Bar, supra,* 52 Cal.3d at p. 37; *Howard v. State Bar, supra,* 51 Cal.3d at p. 221), although it has qualified this statement on several occasions with the observation that "'only the most serious instances of repeated misconduct and multiple instances of misappropriation have warranted actual suspension, much less disbarment. [Citations.] A year of actual suspension, if not less, has been more commonly the discipline imposed in our published decisions involving but a single instance of misappropriation.'" (*Hipolito v. State Bar* (1989) 48 Cal.3d 621, 628, citing *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357, 1367-68 and numerous other cases at p. 628, fn. 4.)

Respondent misappropriated $2,716.61 ($5,000 minus his fee of $3,333.33 minus the CTA balance of $616.72). We consider this as a significant sum (*Lawhorn v. State Bar, supra,* 43 Cal.3d at pp. 1367-1368 [misappropriation of $1,355.75 considered significant]), but a single misappropriation of this amount has not necessarily resulted in disbarment, even when, as here, the misappropriation involved deceit and/or other acts of moral turpitude. (*McKnight v. State Bar, supra,* 53 Cal.3d 1025,1029, 1032; *Edwards v. State Bar, supra,* 52 Cal.3d 28; *Boehme v. State Bar, supra,* 47 Cal.3d 448; *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357.) We further observe that respondent's misappropriation was accompanied by acts of deceit, and, perhaps most significantly, respondent has shown a lack of remorse and disrespect of the disciplinary process. However, at the time of the misconduct, respondent had practiced law for nine years with no prior history of discipline and there is no evidence of subsequent misconduct. Based on these factors, we consider the cases set forth below as most pertinent, noting that the range of discipline is from one year to two years' actual suspension.

*Boehme v. State Bar, supra,* 47 Cal.3d 448, is a case with strikingly similar facts, involving an attorney who misappropriated a client's personal injury settlement in the amount of $2,495.13. The misappropriation was not only wilful, but it involved moral turpitude and

-16-

dishonesty. (*Id.* at pp. 451-452.) Like respondent in the instant case, Boehme's explanation for his non-payment of the settlement was at best far-fetched, consisting of a purported payment to a bookmaker on his client's behalf. (*Id.* at. p. 452.) Moreover, as with the instant case, Boehme failed to appreciate the seriousness of his wrongdoing or demonstrate any repentance, and he presented only two character witnesses. (*Id.* at p. 452.). Boehme offered as evidence a "life-threatening" medical condition, but this condition arose after the misappropriation, and therefore was only considered in the context of his ability to repay the client and not as mitigation for the misappropriation. (*Id.* at p. 451.) Additional serious aggravating factors present in the *Boehme* case, but not present in the instant case, included his lack of candor to the court and his failure to make any restitution. (*Id.* at p. 452.) Nevertheless, the Supreme Court declined to apply standard 2.2 and rejected our recommendation of disbarment, concluding it was "too harsh" because there was but a single instance of misappropriation and no prior misconduct in twenty-two years of practice. (*Id.* at p. 454.) Instead, the court concluded that a five-year stayed suspension, five years' probation and an 18-month actual suspension was sufficient. (*Id.* at p. 450.)

In *Lawhorn v. State Bar, supra,* 43 Cal.3d 1357, another case with very similar facts, the Supreme Court again rejected our recommendation of disbarment, finding it to be "excessive discipline" (*id.* at p. 1360), and instead imposed two years' actual suspension. Lawhorn intentionally misappropriated $1,355.75 of his client's personal injury settlement and misrepresented to his client that his trust account had been frozen by his ex-wife. Lawhorn's client tried on 28 occasions to reach him about payment and finally advised him in a message that she intended to refer the matter to the State Bar. At that point, Lawhorn paid the client in full, including interest, which the Supreme Court accorded mitigative weight because the repayment occurred before Lawhorn learned of the actual filing of the State Bar complaint. (*Id.* at p. 1366.) While acknowledging that disbarment was suggested by the standards (*id.* at p. 1366), the court stressed that the matter involved a single instance of misappropriation (*id.* at p.

-17-

1367), and therefore the court had grave doubts about the applicability of the standards. (*Id.* at p. 1366.) Unlike the instant case, where respondent has nine years of practice with no prior discipline, Lawhorn had only four years of discipline-free practice.

   *McKnight v. State Bar, supra*, 53 Cal.3d 1025, is another case with similar misconduct where an attorney with no prior disciplinary history engaged in acts of moral turpitude arising from the misappropriation of client trust funds and additional misconduct involving the failure to deposit funds into a trust account, failure to promptly notify a client of receipt of funds, and failure to promptly deliver client funds. However, the amount of funds misappropriated in *McKnight* was in excess of $17,000, and, in addition, the attorney improperly entered into a business transaction with his client. The attorney repaid only half of the funds (and then only after the client had filed a complaint with the State Bar). In mitigation, the court gave weight to several attorneys who testified on the attorney's behalf, but gave only minimal weight to medical testimony that he was manic-depressive because there was no causal connection established between his mental illness and the misappropriations. (*Id.* at p. 1038.) In spite of the large amount of funds misappropriated and a finding that the attorney lacked remorse and appreciation of the seriousness of his wrongdoing (*id.* at pp. 1036-37), the Supreme Court did not adopt the disbarment recommendation of standard 2.2(a). Instead, the court ordered the attorney to be actually suspended for one year because it considered the attorney's 10 years of practice without discipline as evidence the misconduct was "isolated and aberrational." (*Id.* at p. 1037.)    This court also has been unwilling to mechanically apply standard 2.2(a) in misappropriation cases where we felt the facts did not warrant such a severe discipline as disbarment. The case of *In the Matter of McCarthy* (Review Dept. 2002) 4 Cal. State Bar Ct. Rptr. 364 involved a far larger misappropriation over a longer period of time than that which occurred here. In the *McCarthy* case, an attorney, acting as a general partner, refused over a period of several years to distribute more than $20,000 of partnership funds to a limited partner and instead used these funds for his own purposes. (*Id.* at p. 374.) We found this conduct constituted willful misappropriation

-18-

involving moral turpitude. (*Id.* at p. 368.) We further found the attorney concealed the funds from his partner (*id.* at p. 381), and sought to have his partner withdraw his State Bar complaint. (*Id.* at p. 368.) In aggravation, we found the attorney's conduct was surrounded by concealment and harmed his client, the attorney failed to make any restitution, and he demonstrated indifference and a lack of remorse. (*Id.* at pp. 383, 385.) We did not consider as an extraordinary demonstration of good character the testimony of two associates and the attorney's wife. However, we did not adopt the disbarment specified by standard 2.2(a) even though the amount involved was significant and mitigating circumstances did not clearly predominate. (*Id.* at p. 384.) Instead, we recommended a four-year stayed suspension, three years of probation with a two-year actual suspension because "all of the misconduct found resulted from a single failure to distribute funds." (*Id.* at p. 385.) In view of the attorney's 40 years' of practice with no prior record of discipline, the misconduct appeared to be "aberrational." (*Ibid.*)

In *In the Matter of Davis, supra,* 4 Cal. State Bar Ct. Rptr. 576, Davis became embroiled in an intra-corporate dispute and ultimately misappropriated over $79,000 of settlement proceeds belonging to the corporation. Davis also failed to account to the board of directors in spite of repeated demands for an accounting. The misconduct was aggravated by significant client harm, overreaching, indifference toward atonement and uncharged misconduct due to multiple conflicts of interest. (*Id.* at p. 592.) We were particularly troubled by Davis' failure to make any restitution to his client, as well as his "various acts of concealment and duplicity. . . ." (*Id.* at p. 596.) Even though we found that Davis' misconduct was "on the more serious end of the [disciplinary] continuum" (*id.* at p. 595) and the substantial mitigation evidence was outweighed by even more serious evidence in aggravation (*id.* at p. 596), we did not adopt disbarment as specified by standard 2.2(a). (*Id.* at p. 596.) Instead, we recommended a four-year stayed suspension, four years of probation with a two-year actual suspension because the misconduct was directed towards a single client and Davis had twelve years of practice with no history of discipline. (*Id.* at p. 596.) We were also impressed with the strength of the testimony of his

-19-

character witnesses and his extensive community service as well as the fact that there was no evidence of additional misconduct after the misappropriation that had occurred more that five years previously. (*Id.* at p. 596; see also *In the Matter of Hertz* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 456 [two-year actual suspension for attorney who disbursed without authorization $15,000 held in trust for client and client's ex-spouse, keeping $5,000 as his own fees, with protracted deceit as to whereabouts of the funds, but mitigation evidence from six character witnesses (including three judges) and evidence of substantial community service]; *In re Trillo, supra,* 1 Cal. State Bar Ct. Rptr 59 [one-year actual suspension for attorney who converted $2,500 in advanced fees and costs without performing services and deceived his clients, aggravated by significant harm to clients, failure to cooperate or to pay restitution, and non-participation in the proceedings, but no prior history of discipline in fourteen years of practice].)

The State Bar cites to *Chang v. State Bar* (1989) 49 Cal.3d 114 in support of its recommendation of disbarment. *Chang* has some similarities to the instant case in that it concerned an attorney with no prior record of discipline who, in one instance, intentionally misappropriated over $7,000 from his trust account for his own purposes and then concealed this fact for several months. But we find *Chang* is not as persuasive as the other discipline cases cited above because the Supreme Court, in ordering Chang's disbarment, focused on his refusal to repay the misappropriated money in spite of repeated demands to do so, and his additional acts of moral turpitude arising out of his lies to the State Bar investigator, which fraudulently delayed the investigation and his "contrived misrepresentations" before the hearing panel, which also hindered its fact-finding function. (*Id.* at p. 128.) These factors, together with his failure to acknowledge the impropriety of his misconduct were offered by the court as "reasons to doubt whether he will conform his future conduct to the professional standards demanded of California attorneys." (*Id.* at p. 129.) In contrast, respondent, repaid the money as soon as Buchanan demanded it and before any complaint was made to the State Bar. Further, although the hearing

judge made several credibility determinations adverse to respondent, she did not find he lacked candor.

In support of its disbarment recommendation the State Bar also cites to *In the Matter of Varakin* (Review Dept. 1994) 3 Cal. State Bar Ct. Rptr. 179. We find this case to be inapposite. *Varakin* is not a misappropriation case but rather a situation where an attorney over a dozen years abused the judicial system by pursuing "a relentless pattern of filing motions and appeals which were manifestly frivolous . . . ." (*In the Matter of Varakin, supra,* 3 Cal. State Bar Ct. Rptr. at p. 190.) He continued this harassment in spite of many substantial sanctions. (*Ibid.*) We concluded that although we held out little hope of preventing Varakin from continuing to abuse the legal system, at the very least disbarment would "prevent him from continuing his abusive course of conduct under the cloak of authority conferred on him by his membership in the bar." (*Id.* at. p. 191.)

Ultimately, each case must be decided on its own facts. (*Connor v. State Bar* (1990) 50 Cal.3d 1047, 1059.) This would be a prototypical misappropriation case but for respondent's unwillingness or inability to appreciate the impropriety of his conduct and his manifest disrespect for the State Bar, the State Bar Court and the hearing judge. Tempering these serious concerns is the fact that respondent's misconduct was directed toward one client and constitutes a single instance of misappropriation of $2,716.61, and respondent has no prior record of discipline. Moreover, his misconduct occurred more than five years ago without any evidence of additional misconduct since that time, which may be considered as a factor in deciding the appropriate discipline. (*Chefsky v. State Bar, supra,* 36 Cal.3d 116, 132; *In the Matter of Davis, supra,* 4 Cal. State Bar Ct. Rptr. at p. 596.) We also note respondent's willingness to enter into a partial stipulation of facts, as well as his payment of restitution before a complaint was filed with the State Bar. After a balanced consideration of all relevant factors, including the standards and other disciplinary cases, we conclude that respondent's misconduct warrants two years' actual

-21-

suspension, which is less severe than the disbarment suggested by the State Bar but more serious than that recommended by the hearing judge.

The State Bar asserts in its brief on appeal that its "main concern with the Hearing Department's recommendation is that respondent would be allowed to resume practice without establishing rehabilitation. . . ." Given respondent's refusal to accept responsibility for his wrongdoing and his lack of remorse and respect for these disciplinary proceedings, we agree. In order to protect the public, preserve confidence in the legal profession and maintain the professional standards for attorneys (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; std. 1.3), we further recommend that respondent's actual suspension be coupled with the condition that it remain in place until he establishes his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii).[24]

## IV. RECOMMENDATION

We recommend that respondent FRANCIS T. FAHY be suspended from the practice of law in the State of California for a period of three years; that execution of the three-year period of

---

[24]At oral argument, and subsequently by order dated October 24, 2006, we asked for additional briefing by the parties as to whether or not a basis exists for a referral of respondent to the Hearing Department for a probable cause determination for involuntary inactive enrollment pursuant to section 6007, subdivision (b)(3) as the result of respondent's disrespectful conduct towards the hearing judge and the prosecutor. (See *Newton v. State Bar* (1983) 33 Cal.3d 480.) The State Bar filed its Memorandum on November 7, 2006. In its memorandum, the State Bar asserted that while respondent "demonstrated a contemptuous and obstreperous attitude" and is "a very troubled and angry person," there is no evidence that he possesses a disabling mental illness, citing *Lebbos v. State Bar, supra*, 53 Cal.3d 37, *Weber v. State Bar* (1988) 47 Cal.3d 492, and *Alberton v. State Bar* (1984) 37 Cal.3d 1, as cases involving similar examples of contemptuous behavior which did not result in a referral for a determination of mental infirmity or illness. The State Bar also points out that the hearing judge, who saw and heard respondent throughout these proceedings, did not indicate a concern for respondent's mental state or competency. Respondent filed a responsive memorandum on January 25, 2007, disputing the State Bar's characterization of him as contemptuous and abusive. Upon giving this matter our consideration, and having reviewed the record de novo, we determine there is not substantial evidence indicating that a referral pursuant to section 6007, subdivision (b)(3) is warranted.

suspension be stayed; and that he be placed on probation for a period of three years on the following conditions:

1. That respondent be actually suspended from the practice of law in the State of California during the first twenty-four months of probation and until he has shown proof satisfactory to the State Bar Court of his rehabilitation, fitness to practice and learning and ability in the general law pursuant to standard 1.4(c)(ii) of the Standards for Attorney Sanctions for Professional Misconduct.

2. Respondent must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all the conditions of this probation. Respondent must maintain, with the State Bar's Membership Records Office *and* the State Bar's Office of Probation in Los Angeles, his current office address and telephone number or, *if no office is maintained,* an address to be used for State Bar purposes. (Bus. & Prof. Code, § 6002.1, subd. (a).) Respondent must also maintain, with the State Bar's Membership Records Office *and* the State Bar's Office of Probation in Los Angeles, his current home address and telephone number. (See Bus. & Prof. Code, 6002.1, subd. (a)(5).) Respondent's home address and telephone number will *not* be made available to the general public. (Bus. & Prof. Code, 6002.1, subd. (d).) Respondent must notify the Membership Records Office and the Office of Probation of any change in any of this information no later than 10 days after the change.

3. Respondent must report, in writing, to the State Bar's Office of Probation in Los Angeles no later than January 10, April 10, July 10 and October 10 of each year or part thereof in which respondent is on probation (reporting dates). However, if respondent's probation begins less than 30 days before a reporting date, respondent may submit the first report no later than the second reporting date after the beginning of his probation. In each report, respondent must state that it covers the preceding calendar quarter or applicable portion thereof and certify by affidavit or under penalty of perjury under the laws of the State of California as follows:

   (a) in the first report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation since the beginning of probation; and

   (b) in each subsequent report, whether respondent has complied with all the provisions of the State Bar Act, the Rules of Professional Conduct, and all other conditions of probation during that period.

   (c) if respondent possesses client funds at any time during the period covered by a required quarterly report, respondent must file with each required report a certificate from respondent and a certified public accountant or other financial professional approved by the Office of Probation, certifying that respondent has maintained a bank account in a bank authorized to do business in the State of California, at a branch located within the State of California, and that such account is designated as a "Trust Account" or Client's Funds Account," and that respondent has kept and maintained the following:

-23-

i.     a written ledger for each client on whose behalf funds are held that sets forth the name of such client; the date, amount and source of all funds received on behalf of such client; the date amount, payee and purpose of each disbursement made on behalf of such client; and the current balance for such client;

ii.     a written journal for each client trust fund account that sets forth the name of such account; the date, amount, and client affected by each debit and credit; and the current balance in such account;

iii.     all bank statements and canceled checks for each client trust account; and

iv.     each monthly reconciliation (balancing) of (i), (ii), and (iii) above, and if there are any differences between the monthly total balances reflected in (i), (ii), and (iii) above, the reason for the differences, and that respondent has maintained a written journal of securities or other properties held for a client that specifies each item of security and property held; the person on whose behalf the security or property is held; the date of receipt of the security or property; the date of distribution of the security or property; and the person to whom the security or property was distributed.

(d)     If respondent does not possess any client funds, property or securities during the entire period covered by a report, respondent must so state under penalty of perjury in the report filed with the Office of Probation for that reporting period. In this circumstance, respondent need not file the accountant's certificate described above.

(e)     The requirements of this condition are in addition to those set forth in rule 4-100 of the Rules of Professional Conduct.

During the last 20 days of this probation, respondent must submit a final report covering any period of probation remaining after and not covered by the last quarterly report required under this probation condition. In this final report, respondent must certify to the matters set forth in subparagraph (b) of this probation condition by affidavit or under penalty of perjury under the laws of the State of California.

4.     Within 30 calendar days from the effective date of the Supreme Court's final disciplinary order in this proceeding, respondent must contact the Office of Probation and schedule a meeting with his assigned probation deputy to discuss probation conditions. At the direction of the Office of Probation, respondent must meet with the probation deputy either in person or by telephone. During the period of probation, respondent must meet promptly with the probation deputy as directed and upon request.

5.     Subject to the proper or good faith assertion of any applicable privilege, respondent must fully, promptly, and truthfully answer any inquiries of the State Bar's Office of Probation that are directed to respondent, whether orally or in writing, relating to whether respondent is complying or has complied with the conditions of this probation.

6.     Within one year after the effective date of the Supreme Court order in this matter, respondent must attend and satisfactorily complete the State Bar's Ethics School and Client Trust Accounting School and provide satisfactory proof of such completion to the

-24-


State Bar's Office of Probation in Los Angeles. This condition of probation is separate and apart from respondent's California Minimum Continuing Legal Education (MCLE) requirements; accordingly, respondent is ordered not to claim any MCLE credit for attending and completing these courses. (Accord, Rules Proc. of State Bar, rule 3201.)

7.  Within one year of the effective date of the discipline herein, respondent must submit to the Office of Probation satisfactory evidence of completion of no fewer than two hours of MCLE-approved courses in anger management. Respondent must obtain approval from the Office of Probation prior to enrolling in any such course. This condition of probation is separate and apart from respondent's MCLE requirements; accordingly, respondent is ordered not to claim any MCLE credit for attending and completing these courses. (Accord, Rules Proc. of State Bar, rule 3201.)

8.  Respondent's probation will commence on the effective date of the Supreme Court order imposing discipline in this matter. At the end of the probationary term, if respondent has complied with the conditions of probation, the Supreme Court order suspending respondent from the practice of law for three years will be satisfied, and the suspension will be terminated.

## V. PROFESSIONAL RESPONSIBILITY EXAMINATION

We further recommend that respondent be ordered to take and pass the Multistate Professional Responsibility Examination administered by the National Conference of Bar Examiners during the period of his actual suspension in this matter and to provide satisfactory proof of such passage to the State Bar's Office of Probation in Los Angeles within the same period.

## VI. RULE 9.20

We further recommend that respondent be ordered to comply with rule 9.20 of the California Rules of Court and to perform the acts specified in paragraphs (a) and (c) of that rule within 30 and 40 calendar days, respectively, after the effective date of the Supreme Court order in this matter.



## VII. COSTS

We further recommend that the costs incurred by the State Bar in this matter be awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and are enforceable as provided in Business and Professions Code section 6140.7 and as a money judgment.

EPSTEIN, J.

We concur:

WATAI, Acting P. J.

STOVITZ, J.*

*Retired Presiding Judge of the State Bar Court, serving by designation of the Presiding Judge

-26-

# CERTIFICATE OF SERVICE
## [Rule 62(b), Rules Proc.; Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on February 23, 2007, I deposited a true copy of the following document(s):

### OPINION ON REVIEW FILED FEBRUARY 23, 2007

in a sealed envelope for collection and mailing on that date as follows:

[X]    by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

**FRANCIS T. FAHY**
**259 OAK ST**
**SAN FRANCISCO, CA  94102**

[X]    by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

**DONALD R STEEDMAN, Enforcement, San Francisco**

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on February 23, 2007.

**Rosalie Ruiz**
Case Administrator
State Bar Court

**EXHIBIT F**

No. 07-5801
Title:               Francis T. Fahy, Petitioner

                            v.

                     State Bar of California
Docketed:            August 10, 2007
Lower Ct:            Supreme Court of California
  Case Nos.:         (S151939)
  Decision Date:     June 20, 2007

~~~Date~~~ ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~~

Jul 14 2007   Petition for a writ of certiorari and motion for leave to proceed in forma pauperis filed.
              (Response due September 10, 2007)

Aug 20 2007   Waiver of right of respondents State Bar of California, et al. to respond filed.

Sep 20 2007   DISTRIBUTED for Conference of October 5, 2007.

Oct 9 2007    Petition DENIED.

---

~~~Name~~~~~~~~~~~~~~~~~~~~~~~~~       ~~~~~~~Address~~~~~~~~~~~~~~~~~       ~~~Phone~~~
**Attorneys for Petitioner:**
Francis Thomas Fahy                    259 Oak Street                        (415) 863-1418
                                       San Francisco, CA  94102

Party name: Francis T. Fahy
**Attorneys for Respondent:**
Tracey L. McCormick                    Office of General Counsel State Bar of CA    (415) 538-2324
  Counsel of Record                    180 Howard Street
                                       San Francisco, CA  94105-1639

Party name: State Bar of California, et al.

**EXHIBIT G**

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

William K. Suter
Clerk of the Court
(202) 479-3011

October 9, 2007

Ms. Tracey L. McCormick
Office of General Counsel State Bar of CA
180 Howard Street
San Francisco, CA  94105-1639

Re:  Francis T. Fahy
     v. State Bar of California
     No. 07-5801

Dear Ms. McCormick:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

**William K. Suter**, Clerk